**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| KENTUCKY STATE DISTRICT COUNCIL OF CARPENTERS PENSION TRUST FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>             Plaintiff,<br><br>      vs.<br><br>ROBERT J. MYERS,<br>KENNETH H. HAYNIE,<br>JOHNNY DANOS,<br>WILLIAM C. KIMBALL,<br>DIANE C. BRIDGEWATER,<br>JEFFREY M. LAMBERTI,<br>RICHARD A. WILKEY,<br>H. LYNN HORAK, and<br>CASEY'S GENERAL STORES, INC.,<br><br>             Defendants | Case No. 4:10-cv-00332<br><br>**CLASS ACTION**<br><br>**PETITION AT LAW** |

**SUMMARY OF THE ACTION**

1. This is a stockholder class action brought by plaintiff on behalf of holders of common stock of Casey's General Stores, Inc. ("Casey's" or the "Company") against Casey's and the Board of Directors (the "Board" or the "Individual Defendants") of Casey's. This action arises out of the Individual Defendants' breaches of fiduciary duty in entrenching themselves in their positions through disproportionate, draconian, and preclusive defensive measures that have harmed the Class (as defined herein). As detailed herein, the Board breached its fiduciary duties when in response to expressions of interest in a potential strategic transaction from Alimentation Couche-Tard Inc. ("Couche-Tard"), it erected a number of substantive impediments to ward off Couche-Tard instead of engaging in good-faith negotiations. In addition, the Board has made materially misleading statements to its shareholders in order to deter them from tendering their stock to Couche-Tard. This action seeks equitable relief compelling the Board to properly exercise its fiduciary duties, forcing it to rescind these draconian measures, and ensuring full and fair disclosure of all material information.

2.      On April 9, 2010, Couche-Tard publicly disclosed its interest in acquiring Casey's. In its announcement, Couche-Tard revealed for the first time that it began approaching Casey's about a strategic transaction in October 2009. Between that time and its public announcement, Couche-Tard made numerous attempts to engage the Individual Defendants in discussions regarding a potential transaction and even made a preliminary offer in writing. Yet, despite the cooperative and non-coercive nature of Couche-Tard's advances, the Individual Defendants refused to negotiate or even interact with Couche-Tard.

3.      Rather than bring its offer straight to shareholders, Couche-Tard on April 9, 2010, simply requested that Individual Defendants or their representatives meet with its representatives. In its letter to the Board, Couche-Tard noted that its "operations are highly decentralized and [has] a track record of keeping most of the existing management and employees in place," pointing to its acquisition of Circle K. Couche-Tard even stated that its "senior management team and … legal and financial advisors remain ready to meet with you and your representatives at your earliest convenience to discuss [the] proposal in detail." Nevertheless, the Board rejected Couche-Tard's proposal that same day, again without negotiating or even discussing the offer with Couche-Tard.

4.      Due to the Board's refusal to engage in negotiations, Couche-Tard was forced to go directly to Casey's shareholders with its offer. On June 2, 2010, Couche-Tard announced a tender offer for the Company's stock at $36.00 per share (the "Tender Offer") and that it was planning to nominate a new slate of directors to the Board. The Board immediately recommended that Casey's shareholders not tender their stock in response to the Tender Offer. Notably, in recommending against the Tender Offer, the Board did not say it would consider offers at a higher price or that it was interested in a transaction that would increase shareholder value.

5.      Through its actions, the Board made it clear it was not concerned with the best interests of the Company's shareholders, employees, customers, or the communities in which Casey's operates. Couche-Tard's letter indicated that its proposed transaction would likely have only a minimal effect, if any, on the Company's employees, customers, and communities in which Casey's operates, although since the Board refused to even speak with Couche-Tard, it did not seek to secure those assurances. The Tender Offer also gave the Company's shareholders the chance to receive a

14% premium to Casey's closing price the previous day, a 24% premium to Casey's one year average closing price, for their stock, and the opportunity to negotiate an even higher price. If shareholders accepted Couche-Tard's offer, however, the Individual Defendants may lose their positions on the Board, through which they receive approximately $2 million a year combined. The Individual Defendants found this prospect unacceptable.

6. In order to secure their continued positions, the Board placed a number of impediments to the successful completion of the Tender Offer. Specifically, in an effort to entrench themselves and make the Company less attractive to potential strategic partners, the Individual Defendants (i) adopted a poison pill with a one-year term (the "Poison Pill") on April 16, 2010; (ii) entered into amended employment agreements with numerous officers that provided for their continued employment even if there is a change of control; and (iii) initiated meritless litigation against Couche-Tard. These actions are disproportionate to the threat posed by the Tender Offer and unreasonably make an acquisition of the Company prohibitively expensive. For instance, once the Poison Pill is triggered, all shareholders except the party triggering the Poison Pill will have the right to acquire newly issued Casey's stock for half its value. In addition, on June 15, 2010, the Company announced a massive 17.6% dividend hike, which will serve to make the Company a less attractive acquisition target by reducing its cash on hand.

7. Worse still, the Board made material misstatements and omitted material information in its recommendation that Casey's shareholders not tender their stock to Couche-Tard contained in the Schedule 14D-9 filed with the U.S. Securities and Exchange Commission ("SEC") on June 8, 2010 (the "Recommendation Statement"). For instance, the Board states that it believes that the consummation of the Tender Offer will adversely affect other constituencies based on "the differences in the manner in which Casey's and Couche-Tard are operated and managed." The Board had no basis for such a statement, however, because it has refused to even negotiate with Couche-Tard and therefore does not know how Casey's would be managed post-acquisition. The 14D-9 also insinuates without substantiation that Couche-Tard may have trouble getting financing, despite Couche-Tard earning over $250 million a year and having a market capitalization of $3.34 billion.

In fact, Couche-Tard has noted that several prominent banks have come forward expressing their interest in providing financing for the Tender Offer.

8.  The Tender Offer was set to expire on July 9, 2010, but was extended by Couche-Tard to August 6, 2010.  The Board's adoption of the disproportionate measures and its refusal to even talk with Couche-Tard are in violation of their fiduciary duties of care and loyalty.  The Board's refusal to negotiate in good faith and present the Company's shareholders an opportunity to fairly consider Couche-Tard's offer is causing substantial harm to Casey's shareholders.

9.  In sum, the Board has demonstrated a refusal to act in accordance with its fiduciary duties.  Instead, these Individual Defendants have demonstrated a course of action consistent only with their own self-serving motives – namely, creating barriers to a change of control in order to ensure that they will retain their prestigious and lucrative positions with the Company.

10.  As detailed herein, applicable law imposes upon the Individual Defendants the obligation to act in the best interests of Casey's and its public stockholders and to ensure that no conflicts of interest exist that would interfere with that mandate. Accordingly, the Individual Defendants must immediately act to comply with their fiduciary duties by, among other things: (i) nullifying and withdrawing the draconian, disproportionate, and preclusive measures; (ii) refraining from adopting, and rescinding, any similar measures; and (iii) providing shareholders with a fair process to examine the strategic alternatives available to the Company.

## JURISDICTION AND VENUE

11.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has jurisdiction pursuant to 15 U.S.C. § 78bb(f)(3)(A)(i) because it is a class action based upon the statutory or common law of Iowa, the Company's state of incorporation, and thus may be maintained in Federal court.  Defendants are all citizens of Iowa.  Kentucky State District Council of Carpenters Pension Trust Fund is a citizen of Kentucky and Indiana, not Iowa.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all claims that are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) Casey maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Casey's shareholders, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

13. Plaintiff Kentucky State District Council of Carpenters Pension Trust Fund is a shareholder of Casey's. Plaintiff is a citizen of Kentucky and Indiana.

14. Defendant Casey's is an Iowa corporation incorporated in 1967 that operates convenience stores under the name "Casey's General Store," "HandiMart," and "Just Diesel" in nine Midwestern states, including Iowa, Missouri, and Illinois. Casey's executive offices are located at One Convenience Blvd., Ankeny, Iowa.

15. Defendant Robert J. Myers ("Myers") is President and Chief Executive Officer ("CEO") of Casey's and has been since June 2006. Myers is also a Casey's director and has been since 2006. Myers was Chief Operating Officer of Casey's from May 2002 to June 2006 and Senior Vice President from December 1998 to May 2002. Myers has been associated with Casey's since 1989. Casey's paid defendant Myers the following compensation as an executive:

| Fiscal Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | Change In Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation |
|---|---|---|---|---|---|
| 2009 | $660,000 | $47,673 | $330,000 | $477,348 | $28,086 |

Defendant Myers is a citizen of Iowa.

16.     Defendant Kenneth H. Haynie ("Haynie") is a Casey's director and has been since 1987. Casey's paid defendant Haynie the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | Option Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| 2009 | $55,000 | $16,600 | $38 | $71,638 |

Defendant Haynie is a citizen of Iowa

17.     Defendant Johnny Danos ("Danos") is a Casey's director and has been since 2004. Casey's paid defendant Danos the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | Option Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| 2009 | $56,000 | $16,600 | $62 | $72,662 |

Defendant Danos is a citizen of Iowa.

18.     Defendant William C. Kimball ("Kimball") is a Casey's director and has been since 2004. Casey's paid defendant Kimball the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | Option Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| 2008 | $49,000 | $16,600 | $96 | $65,696 |

Defendant Kimball is a citizen of Iowa.

19.     Defendant Diane C. Bridgewater ("Bridgewater") is a Casey's director and has been since 2007. Casey's paid defendant Bridgewater the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | Option Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| 2009 | $62,000 | $16,600 | $96 | $78,696 |

Defendant Bridgewater is a citizen of Iowa.

20.     Defendant Jeffrey M. Lamberti ("Lamberti") is a Casey's director and has been since March 2008. Casey's paid defendant Lamberti the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | Option Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| 2009 | $46,000 | $16,600 | $96 | $62,696 |

Defendant Lamberti is a citizen of Iowa.

21. Defendant Richard A. Wilkey ("Wilkey") is a Casey's director and has been since December 2008. Casey's paid defendant Wilkey the following compensation as a director:

| Fiscal Year | Fees Paid In Cash | All Other Compensation | Total Compensation |
|---|---|---|---|
| 2009 | $33,000 | $62 | $33,062 |

Defendant Wilkey is a citizen of Iowa.

22. Defendant H. Lynn Horak ("Horak") is a Casey's director and has been since September 2009. Defendant Horak is a citizen of Iowa.

23. The defendants named above in ¶¶15-22 are sometimes collectively referred to herein as the "Individual Defendants."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

24. The directors and officers of a publicly traded corporation owe the highest duties of loyalty, good faith, fair dealing, and care to shareholders. In accordance with their duties of loyalty and care, the Individual Defendants, as directors and/or officers of Casey's, are obligated to:

(a) objectively evaluate any reasonable proposed transaction, including the Tender Offer, to determine whether it is in the best interests of the Company, its public shareholders and the Company's other constituencies;

(b) fully and fairly disclose all material information to shareholders when recommending that they do or do not take action;

(c) refrain from contractually prohibit themselves from complying with their fiduciary duties;

(d) refrain from participating in any transaction in which their loyalties are divided; and/or

   (e) refrain from placing any unreasonable or preclusive hurdles to a potential acquisition of the Company.

  25. Plaintiff alleges herein that the defendants, separately and together, have violated and are continuing to violate the fiduciary duties they owe to plaintiff and the Company's other public shareholders, including the duties of loyalty and due care.  Defendants' actions were draconian, disproportionate, and unreasonable.  Moreover, the Individual Defendants' actions will have a preclusive effect of preventing shareholders from making their own independent choice regarding Couche-Tard's non-coercive Tender Offer and dissuade additional offers for the Company.

  26. Indeed, by failing to adequately consider the Tender Offer and instead erecting impediments to it, the Individual Defendants cannot possibly satisfy their duties or care and loyalty.

  27. As a result of their failure to consider value-maximizing alternatives in good faith, the Individual Defendants, as a matter of law, have breached their fiduciary duties of good faith and fair dealing owed to the Company and its shareholders.

**THE BOARD REFUSES TO ENTER INTO NEGOTIATIONS WITH COUCHE-TARD**

  28. From Couche-Tard's initial approach through the present, the Board has refused to participate in any discussions with Couche-Tard, about a transaction that could increase shareholder value.  When Couche-Tard first approached the Board on October 6, 2009 about entering into a strategic transaction, the Board simply did not respond.

  29. On November 16, 2009, Couche-Tard again approached the Board about a possible strategic transaction.  This time defendant Myers told Couche-Tard to submit any proposal in writing to the Board.

  30. On March 9, 2010, Couche-Tard made an unsolicited, all-cash offer to the Board to acquire Casey's for $36.00 a share, representing an aggregate purchase price of about $1.85 billion.  Notably, Couche-Tard's offer was based solely on publicly available information, without the benefit of any due diligence.

  31. On March 29, 2010, without speaking with Couche-Tard or Couche-Tard's financial advisors, the Board in a short letter, rejected Couche-Tard's offer, and declined to make a counteroffer.  The letter did not disclose the reasons for the Board's decision.  Casey's also did not

disclose to its shareholders that it had been approached by Couche-Tard. Undeterred, on March 30, 2010, Couche-Tard reiterated its interest in entering into negotiations regarding a strategic transaction by sending a letter to the Board. On April 7, 2010, Casey's again rejected Couche-Tard's proposal without speaking with Couche-Tard or its financial advisors.

32. Unable to elicit any meaningful response from the Board, Couche-Tard was forced on April 9, 2010, to disclose its offer publicly in an open letter to Casey's Board and its CEO, defendant Myers. In particular, the letter stated:

> April 9, 2010
>
> The Board of Directors of Casey's General Stores, Inc.
> c/o Robert J. Myers
> Casey's General Stores, Inc.
> One Convenience Blvd.
> Ankeny, Iowa 50021
>
> Mr. Myers:
>
> As conveyed to you in our letters dated March 9, 2010 and March 30, 2010, our Board of Directors has authorized a proposal to acquire all of the outstanding shares of common stock of Casey's General Stores, Inc. ("Casey's") at a price of $36.00 per share in cash. Despite our repeated efforts starting in October 2009 to engage in negotiations, and without the benefit of discussing our proposal with us or our advisors, your Board of Directors unanimously rejected our proposal. Our goal remains to work with you to agree to a negotiated transaction. However, due to your unwillingness to engage in discussions and the unique opportunity presented by our proposal for your shareholders to realize full and immediate value, we are compelled to make this proposal known to your shareholders.
>
> As we have stated in our prior correspondence, including our initial contact in October 2009, we believe that a combination of Casey's and Alimentation Couche-Tard Inc. ("Couche-Tard") presents an exciting opportunity to create significant value for our respective shareholders, employees, business partners and other constituencies. The transaction consideration implies a last twelve months (as of January 31, 2010) EBITDA multiple of 7.4x and a price of $1.3 million per store, which compares favorably to corresponding metrics of publicly traded companies and precedent transactions in our industry. Our proposal represents a 14% premium over Casey's closing price on April 8, 2010, a 17% premium over Casey's 90-calendar day average closing price and a 24% premium over Casey's one-year average closing price.
>
> Couche-Tard is the largest independent convenience store operator in North America (whether integrated with a petroleum company or not) in terms of number of company-operated stores. As of April 8, 2010, we had an enterprise value of $4.1

billion. As you know, we have successfully completed similar transactions, including the acquisition of Circle K from ConocoPhillips and transactions with ExxonMobil, Shell, BP and Spirit Energy. As such, we are confident that we can successfully combine our two companies to quickly maximize the benefits for our respective constituencies.

We have an extremely high regard for your operations, management and talented employees. Our operations are highly decentralized and we have a track record of keeping most of the existing management and employees in place as we did in the Circle K acquisition and our other transactions.

Our senior management team and our legal and financial advisors have already completed extensive analysis and due diligence of Casey's based on publicly available information. As previously mentioned, we have retained Credit Suisse Securities (USA) LLC as our financial advisor and Dewey & LeBoeuf LLP as our legal counsel. We have also retained Innisfree M&A Incorporated as our proxy solicitor. We are prepared to proceed expeditiously and, with your cooperation, believe we can be in position to execute a definitive agreement within two to three weeks.

Given our financial strength and the strong support of our financing sources, we do not anticipate that financing for the proposed transaction will be an issue.

I want to emphasize to you and your Board of Directors our seriousness about this proposal and our commitment to a combination of Casey's and Couche-Tard. We are convinced that this proposal is compelling for Casey's and its shareholders and provides a unique opportunity for Casey's shareholders to realize full and immediate value. We also firmly believe that, given our approach to acquisitions, this transaction would be in the best interests of your employees, customers and the communities in which you operate. We believe that your continued failure to engage in discussions about our proposal is not in the best interest of your shareholders or any of your other constituencies.

Our strong preference is to work with you to negotiate a mutually acceptable transaction and avoid unnecessary costs. Our senior management team and our legal and financial advisors remain ready to meet with you and your representatives at your earliest convenience to discuss our proposal in detail. However, if you continue to refuse to engage in meaningful negotiations, we are prepared to submit our proposal directly to your shareholders and commence a proxy contest to replace your Board of Directors.

We urge you and your Board of Directors to reconsider our proposal. We look forward to a timely and favorable response.

Sincerely,

/s/ Alain Bouchard

Alain Bouchard
President and Chief Executive Officer

33. The Board publicly rejected Couche-Tard's proposal that same day in a letter signed by defendant Myers expressing his "disappointment" with Couche-Tard's offer and that the Board "unanimously determined to reject your proposal…." The Board stated that the offer significantly undervalued the Company and is not in the best interests of Casey's. The Board's letter did not explain why Couche-Tard's offer undervalued the Company, how much the offer undervalued the Company, why it was not in the best interests of the Company, nor only it would not negotiate with Couche-Tard.

34. Unable to engage with the Board in negotiations, Couche-Tard announced the Tender Offer on June 2, 2010. The Tender Offer is contingent on the Board redeeming the Poison Pill. The Board advised shareholder not to take any action regarding the Tender Offer that same day. On June 8, 2010, the Board advised shareholders not to tender their stock to Couche-Tard.

35. The Individual Defendants' refusals are not the product of valid business judgment. Without talking to Couche-Tard or its advisers, the Board has failed to obtain and consider all reasonably available information. The Board instead has flatly rejected each of Couche-Tard's advances.

**THE BOARD ENACTS DRACONIAN, PRECLUSIVE, AND DISPROPORTIONATE MEASURES TO WARD OFF COUCHE-TARD**

36. On April 16, 2010, the Board adopted the Poison Pill to make any acquisition of the Company prohibitively expensive, if not impossible, through the issuance of preferred share purchase rights ("Rights"). The Poison Pill works in the following way:

(a) The Rights become exercisable upon the earlier of: (i) the date that Casey's learns that a person (with certain exceptions not applicable here) has acquired or obtained the right to acquire beneficial ownership of 15% or more of the outstanding common stock (thus becoming an "Acquiring Person"), or (ii) the date of the first public disclosure of an intention to commence a tender or exchange offer which would result in any person acquiring beneficial ownership of 15% or more of the outstanding common stock.

(b) When a party becomes an Acquiring Person, all Rights other than those held by the Acquiring Person "flip-in." This means that each Right becomes exercisable and entitles its holder to purchase, at a purchase price of $95, the number of 1/1000ths of a share of Casey's Series A Preferred Stock equal to the number of shares Casey's common stock worth twice the purchase price, or $190, at the then-current market value.

(c) If Casey's engages in a merger, the Rights "flip-over" and become exercisable for shares of the Acquiring Person's common stock at the bargain price of two shares for the price of one, based on the market price.

(d) The Rights expire on April 15, 2011, unless extended, redeemed or exchanged.

37. In the event shareholders exercise their flip-in, the Company's outstanding equity will substantially increase, and the price to purchase the entire Company would become exorbitant. If the flip-over provision is triggered, the capital structure of an acquiring entity would be significantly impaired and the interests of its shareholders drastically diluted. Under either scenario, the practical effect of the Poison Pill is that it becomes financially unfeasible to acquire the Company.

38. In an effort to further entrench and enrich the Board and render any potential transaction unreasonably expensive, on May 27 and June 1, 2010, the Company entered into amended employment agreements with defendant Myers, three other executive officers, and eight additional officers. The agreements provide for "continued employment of the officer for two years … in the same position and with the same duties … and at the same or similar location as of immediately prior" in the event of a change in control in the Company. The officer will also be entitled to the same base pay rate as his/her highest pay rate in the prior 12 months, an annual cash bonus equal to the officer's average bonus over the prior three years, and continued participation in the Company's benefit plans.

39. Under the amended employment agreements, any covered officer may also terminate his/her own employment for "good reason" and still receive the benefits listed above. Good reason includes: (i) an assignment of duties inconsistent with the officer's existing position; (ii) a reduction in compensation; (iii) the requirement to relocate to another office; and (iv) certain terminations of

employment. Further, the amended employment agreements included an amendment to the definition of a change in control to provide that a change in control will now mean the consummation of a merger or other transaction rather than shareholder approval of a merger or other transaction. These actions reveal that the Individual Defendants are concerned only with preserving their positions or, at least, preserving the income they stand to gain from those positions.

40. In addition to the above draconian measures, the Board has directed the Company to initiate litigation against Couche-Tard in an attempt to ward off Couche-Tard's advances and discourage other potential acquirers from coming forward. On June 11, 2010, the Company filed a lawsuit captioned *Casey's General Stores, Inc. v. Alimentation Couche-Tard, Inc. et al*, No. 10-cv-00265-JAJ, in United States District Court for the Southern District of Iowa. The lawsuit accuses Couche-Tard of announcing its offer in order to drive up the Company's stock price so that Couche-Tard could sell its Casey's shares at a higher price. Casey's argument makes little sense. While Couche-Tard did net roughly $14 million from these sales, such an amount hardly outweighs the risks inherent in such a reckless and visible transaction if conducted in a fraudulent manner, especially for a company whose revenues and gross profits in fiscal year 2009 were $15.7 billion and $2.4 billion, respectively. In fact, Couche-Tard disclosed the exact amount of stock it sold on June 17, 2010, explaining that the gain from the sales would be used to offset the expenses incurred in making the Tender Offer. Couche-Tard reiterated that it is "fully committed" to consummating the Tender Offer.

41. The Individual Defendants have also demonstrated that they are willing to risk the Company's long-term health in order to entrench themselves and prevent an acquisition. On June 15, 2010, in an action designed to make the Company less attractive to potential suitors by reducing its cash on hand, the Company announced that it was going to issue a dividend far out of line with its previous dividends. In fact, the $0.10 dividend announced on June 15, 2010 represented an increase of over 17.6%. Prior to that announcement, the company had paid dividends of $0.085 (8.5 cents) on April 29, 2010, Jan 28, 2010, Oct 29, 2009, and July 30, 2009; and dividends of $0.075 (7.5 cents) on April 29, 2009, Jan 29, 2009, Oct 30, 2008, and July 30, 2008. This is on top of the $6.9

million in legal and advisory fees the Company has paid so far to avoid having to consider Couche-Tard's offer.

## DEFENDANTS' FALSE AND MISLEADING DISCLOSURES

42. The Recommendation Statement makes material misstatement of fact, and fails to disclose material information which will preclude Casey's shareholders from making a fully informed decision on whether to tender their stock. The Recommendation Statement omits and/or misrepresents material information concerning, among other matters:

(a) The EBITDA multiple analysis presented by the Board in the Recommendation Statement in the effort to demonstrate the inadequacy of the price offered by Couche-Tard. The Board compares the Tender Offer's implied multiple to earnings before interest, tax, depreciation, and amortization (EBITDA) as 7.0x LTM EBITDA for the 12 months ended January 31, 2010. It then compares this LTM EBITDA multiple to the five year average LTM EBITDA multiple for the convenience store sector. The Recommendation Statement does not state why the Board chose the five year average LTM EBITDA multiple, particularly since it is comparing that number to the Tender Offer's LTM EBITDA multiple only for the past 12 months. Further, the Recommendation Statement does not provide shareholders with the Tender Offer's multiple to the Company's five year average LTM EBITDA.

(b) The affect of the Tender Offer on Casey's non-shareholder constituencies. The Recommendation Statement says that the consummation of the Tender Offer will adversely impact Casey's other constituencies because of "the differences in the manner in which Casey's and Couche-Tard are operated and managed." The Recommendation Statement does not state what those differences are or why they would have an adverse impact on Casey's employees, suppliers, creditors, customers, and the communities in which Casey's operates.

(c) The ability of Couche-Tard to obtain financing. The Recommendation Statement implies that Couche-Tard will have difficulty obtaining financing. The Registration Statement, however, does not give the reasons for the Board's belief that Couche-Tard will not be able to obtain financing.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action for itself and on behalf of all holders of Casey's common stock which have been or will be harmed by the conduct described herein (the "Class").  Excluded from the Class are the defendants and any individual or entity affiliated with any defendant.

44.     This action is properly maintainable as a class action.

45.     The Class is so numerous that joinder of all members is impracticable.  According to Casey's SEC filings, there were more than 50.9 million shares of Casey's common stock outstanding as of March 5, 2010.

46.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions include, *inter alia*:

(a)     whether the Individual Defendants have breached any of their fiduciary duties to plaintiff and the other members of the Class, including the duties of good faith, due care, honesty and fair dealing;

(b)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage offers for the Company or its assets;

(c)     whether the Individual Defendants have breached their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Recommendation Statement; and

(d)     whether the Individual Defendants have irreparably harmed plaintiff and the other members of the Class.

47.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

48.     Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

49.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

50.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

51.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

<div align="center">COUNT I</div>

**<div align="center">Against the Individual Defendants for Breach of Fiduciary Duty</div>**

52.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

53.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have violated their fiduciary duties of good faith, loyalty, candor, and due care at the expense of plaintiff and other members of the Class.

54.     As alleged herein, the Individual Defendants have breached their fiduciary duties because, among other reasons, they:

(a)     failed to adequately consider the Tender Offer;

(b)     failed to apprise themselves of the true value of the Company, or the benefits associated with pursuing the Tender Offer or an alternate transaction, by, among other things, considering the merits of such transactions and engaging in a market check or canvas of the industry;

(c)     failed to ensure that the Poison Pill and the other draconian measures do not unreasonably preclude valuable transactions, including the Tender Offer;

(d)     made materially misleading statements in and omitted material information from the Recommendation Statement; and

(e)     failed to otherwise take the steps necessary to comply with its fiduciary duties.

55.     As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to plaintiff and the other members of the Class, and will further a process that entrenches them in their prestigious and lucrative positions. Furthermore, absent injunctive relief, plaintiff and the Class will continue to suffer irreparable harm as result of

the Individual Defendants' breaches of fiduciary duty, for which plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in its favor and in favor of the Class and against defendants as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring that the Individual Defendants' conduct of instituting the disproportionate and draconian measures and issuing the materially misleading Recommendation Statement to fend off the Tender Offer is in breach of their fiduciary duties of loyalty, good faith, fair dealing, candor, and due care;

C. Preliminarily and permanently enjoining the Individual Defendants from placing their own interests ahead of those of Casey's and its shareholders by instituting unreasonable and disproportionate defensive measures;

D. Preliminarily and permanently enjoining the Individual Defendants from initializing any defensive measure which may render the acquisition of the Company unduly burdensome or expensive for a potential acquirer;

E. Ordering the Board to rescind or redeem the Poison Pill and/or declaring the Poison Pill invalid;

F. Invalidating the amendments to the employment agreements;

G. Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct and in breach of any duty owed to Casey's shareholders;

H. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

I. Granting such further equitable or other relief as this Court may deem just and proper.

| | |
|---|---|
| DATED: July 21, 2010 | Respectfully submitted, |

/s/ Steven P. Wandro

Steven P. Wandro
Kara M. Simons
WANDRO, BAER & McCARTHY, P.C.
2501 Grand Avenue
Des Moines, IA  50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
swandro@2501grand.com

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
REBECCA A. PETERSON
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN ROBBINS
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: (619) 338-4502
Facsimile:  (619) 239-3247

Attorneys for Plaintiff

498857_