**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| KENTUCKY STATE DISTRICT COUNCIL OF CARPENTERS PENSION TRUST FUND, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>  v.<br><br>ROBERT J. MYERS, KENNETH H. HAYNIE, JOHNNY DANOS, WILLIAM C. KIMBALL, DIANE C. BRIDGEWATER, JEFFREY M. LAMBERTI, RICHARD A. WILKEY, H. LYNN HORAK, and CASEY'S GENERAL STORES, INC.,<br><br>            Defendants. | **Civil Action No. 4:10-cv-00332**<br><br>**ECF CASE** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S PETITION**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

THE IOWA STATUTORY FRAMEWORK ....................................................................... 2

ARGUMENT ........................................................................................................................ 4

I.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS BARRED BY
     IOWA STATUTORY LAW ........................................................................................ 4

     A.   The Board Has No Duty to Maximize Shareholder Value. ................................. 5

     B.   The Board Is Permitted to Institute Defensive Measures. ................................... 7

     C.   The Board's Decisions Are Protected by the Business Judgment Rule ............... 8

II.  PLAINTIFF'S DISCLOSURE CLAIM FAILS AS A MATTER OF LAW ............... 11

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937 (2009) ........................................................................4

Barkan v. Amsted Indus., Inc., 567 A.2d 1279 (Del. 1989) .........................................................13

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...........................................................................4

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) .................................................................................11

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ....................1

Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc., 430 N.W.2d 447 (Iowa 1988) ........................................................................................................................................8

Golden Cycle, LLC v. Allan, No. Civ.A. 16301, 1998 WL 276224 (Del. Ch. May 20, 1998) ................................................................................................................................12, 14

Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 198 F.3d 685 (8th Cir. 1999)................9

Hanrahan v. Kruidenier, 473 N.W.2d 184 (Iowa 1991) ...........................................................8, 11

In re Daktronics, Inc. Sec. Litig., No. CIV 08-4176, 2010 WL 2332730 (D.S.D. June 9, 2010) ........................................................................................................................................6

Lewis v. Honeywell, Inc., 1987 WL 14747 (Del. Ch. July 28, 1987) ...................................... 9, 11

McAdams v. McCord, 584 F.3d 1111 (8th Cir. 2009) .................................................................4, 6

MHC Inv. Co. v. Racom Corp., 254 F. Supp. 2d 1090 (S.D. Iowa 2002) ......................................9

Pogostin v. Rice, 480 A.2d 619 (Del. 1984), overruled on other grounds ....................................11

Rosenblatt v. Getty Oil Co., Del. Supr., 493 A.2d 929 (1985) .....................................................12

State v. Olsen, 618 N.W.2d 346 (Iowa 2000) .................................................................................8

Stroud v. Grace, 606 A.2d 75 (Del. 1992) ....................................................................................12

TSC Indus. v. Northway, Inc., 426 U.S. 438 (1976) .....................................................................12

U.S. Jaycees v. Iowa Civil Rights Comm'n, 427 N.W.2d 450 (Iowa 1988) ..................................8

Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893 (8th Cir. 2010) .....................................4

**Statutes & Rules**

6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.) .................................................................................3, 5, 8

6 Iowa Prac., Bus. Orgs. § 28:13 (2009 ed.) ..................................................................................11

Iowa Code § 490.624A .................................................................................................................3, 7

Iowa Code § 490.830 ...................................................................................................................3, 10

Iowa Code § 490.831 .........................................................................................................................3

Iowa Code § 490.1108A ........................................................................................................... passim


**Other Authorities**

Jonathan D. Springer, Corporate Constituency Statutes: Hollow Hopes and False Fears,
   1999 Ann. Surv. Am. L. 85 (1999) ..............................................................................................6

Defendants Casey's General Stores, Inc. ("Casey's") and Robert J. Myers, Kenneth H. Haynie, Johnny Danos, William C. Kimball, Diane C. Bridgewater, Jeffrey M. Lamberti, Richard A. Wilkey and H. Lynn Horak (the "Board" or the "Directors"; with Casey's, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiff's purported Class Action Petition ("Pet." or "Petition").

## PRELIMINARY STATEMENT

As Defendants previously have explained, this case should be stayed pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). (See Defs. Mot. to Stay Federal Proceedings Pending the Resolution of Parallel State Proceedings, Ky. State Dist. Council of Carpenters Pension Trust Fund v. Myers, No. 4:10-cv-00332 (S.D. Iowa Aug. 5, 2010), ECF No. 7.) Defendants are filing a Motion to Dismiss now only because the Court has not yet ruled on the Colorado River motion. If the Court grants Defendants' Colorado River motion, as Defendants believe it should, this action will be stayed in favor of the parallel State Action and there is no need for the Court to consider the legal sufficiency of Plaintiff's Petition.

If, however, the Court denies Defendants' Colorado River motion, it should take up the instant Motion and dismiss Plaintiff's Petition in its entirety because the claims asserted therein are barred by Iowa statutory law. Plaintiff asserts that the Board breached its fiduciary duties to Casey's shareholders by (a) failing to respond to Alimentation Couche-Tard Inc.'s ("Couche-Tard") hostile tender offer in a manner that purportedly would maximize shareholder value; (b) adopting a "poison pill" and other defensive measures; and (c) violating the "duty of candor" by making purported misstatements or omissions in Casey's Schedule 14D-9 filed with the Securities and Exchange Commission ("SEC") on June 8, 2010 (the "Recommendation Statement"). (Pet. ¶¶ 53-54.) To the contrary, Iowa statutory law (a) does not require that a board of directors maximize shareholder value when responding to a hostile tender offer, but

presumes that a board acted in good faith and on an informed basis when making corporate decisions; (b) expressly permits a board of directors to employ defensive measures – including a poison pill – to fend off hostile bids; and (c) does not even recognize a separate duty of candor. Plaintiff's Petition must be dismissed.

## THE IOWA STATUTORY FRAMEWORK

The Iowa legislature has granted directors of Iowa corporations broad discretion to determine the future of the corporations they govern, including how best to address hostile acquirers. Iowa Code Section 490.1108A(1) (the "Constituency Statute"), part of the Iowa Business Corporations Act, enumerates the factors that directors of an Iowa corporation may consider when faced with a hostile tender offer. It states:

> "A director, in determining what is in the best interest of the corporation when considering a tender offer or proposal of acquisition . . . <u>may consider any or all of the following community interest factors, in addition to consideration of the effects of any action on shareholders:</u>
>
> a. The effects of the action on the corporation's employees, suppliers, creditors, and customers.
>
> b. The effects of the action on the communities in which the corporation operates.
>
> c. The long-term as well as short-term interests of the corporation and its shareholders, including the possibility that these interests may be best served by the continued independence of the corporation." <u>Id.</u> (emphasis added).

The Constituency Statute also states that, after considering the aforementioned community interest factors, a board has full authority to reject a takeover offer, and it has <u>no fiduciary duty</u> to engage in further negotiations or actions that would assist the hostile acquirer, even if it would be in the best interest of the company's shareholders to do so:

> "If on the basis of the community interest factors . . . the board of directors determines that a proposal or offer to acquire or merge the corporation is not in the best interests of the corporation, it may reject the proposal or offer", and "has <u>no obligation to facilitate, to remove any barriers to, or to refrain from impeding, the proposal or offer. Consideration of any or all of the community interest</u>

2

<u>factors is not a violation of the business judgment rule or of any duty of the director to the shareholders</u> . . . even if the director reasonably determines that the community interest factor or factors outweigh the financial or other benefits to a corporation or a shareholder or group of shareholders." Iowa Code § 490.1108A(2) (emphasis added).

These statutory provisions unequivocally prohibit breach of fiduciary duty claims against a board of directors that rejects a hostile takeover based on its determination that the takeover would not be in the best interest of the company's community interest factors, even if the takeover <u>would be</u> in the best interest of the company's shareholders. <u>See</u> 6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.). In short, the board of an Iowa company has no fiduciary duty to maximize shareholder value in the takeover context.

The Iowa Business Corporations Act also expressly authorizes a board to use the so-called "poison pill defense". Iowa Code § 490.624A. It provides:

> "The terms and conditions of stock rights or options issued by the corporation may include, without limitation, restrictions or conditions that preclude or limit the exercise, transfer, or receipt of such rights or options by a person, or group of persons, owning or offering to acquire a specified number or percentage of the outstanding common shares or other securities of the corporation, or a transferee of the offeror, or that invalidate or void such stock rights or options held by an offeror or a transferee of the offeror." <u>Id.</u>

That statute grants directors very broad discretion to adopt poison pills to deter or impede hostile takeovers.

While a director must act "[i]n a manner the director reasonably believes to be in the best interests of the corporation" (Iowa Code § 490.830(1)(b)), the Business Judgment Rule, as codified in Iowa, makes clear that "[a] director <u>shall not</u> be liable to the corporation or its shareholders for any decision as director to take or not to take action, or any failure to take any action, <u>unless the party asserting liability establishes</u>" that the director did not act on an informed basis and in good faith. Iowa Code § 490.831(1) (emphasis added). Thus, a Board's decision – including its decision to reject a hostile tender offer – is presumed to be informed, in good faith

3

and in the best interests of the company and its constituencies. To state any claim for breach of fiduciary duty, Plaintiff must allege specific facts to rebut that presumption.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a party to plead a basis for liability that is more than a "sheer possibility". Id. To satisfy its pleading obligation, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". Twombly, 550 U.S. at 555. "In order to successfully state a claim upon which relief can be granted, [plaintiff] 'must assert facts that affirmatively and plausibly suggest [plaintiff] has the right [it] claims . . . rather than facts that are merely consistent with such a right'". Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893, 895 (8th Cir. 2010) (third and fourth alterations in original); see also Iqbal, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted). Although a court must take the plaintiff's factual allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation'". McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).

### I. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS BARRED BY IOWA STATUTORY LAW.

Plaintiff's Petition, which alleges that the Board "has refused to participate in any discussions with Couche-Tard [ ] about a transaction that could increase shareholder value" (Pet. ¶ 28) and has failed "to consider value-maximizing alternatives in good faith" (id. ¶ 27),

4

fails as a matter of law. Iowa law simply and unequivocally does <u>not</u> require that directors evaluate tender offers on the basis of maximizing shareholder value. Nor does Iowa law require that directors – having evaluated and rejected an offer as not in the best interest of its community interest factors – facilitate the hostile offeror's advances. To the contrary, Iowa statutory law expressly authorizes directors

- <u>not</u> to facilitate the hostile offer,
- <u>not</u> to remove barriers to the hostile offer,
- <u>not</u> to refrain from impeding the hostile offer, and indeed,
- to take defensive measures to impede such a hostile offer.

Thus, Plaintiff's allegations, even if true (and they are not), provide no cause of action under Iowa law and must be dismissed.

### A. The Board Has No Duty to Maximize Shareholder Value.

In evaluating Couche-Tard's unsolicited offer, the Board had no fiduciary duty to maximize shareholder value. Instead, Iowa's Constituency Statute allows the Board to consider not only the impact of the offer on Casey's shareholders, but also the impact a transaction would have on a host of additional factors, including Casey's "employees, suppliers, creditors, and customers" and "the communities in which [Casey's] operates". Iowa Code § 490.1108A(1)(a), (b).

Those factors need not take a backseat to shareholder value. Instead, the interests of those other constituencies may <u>trump</u> shareholder interests. Iowa Code § 490.1108A(2) ("Consideration of any or all of the community interest factors is not a violation of . . . any duty of the director to the shareholders . . . even if the director reasonably determines that a community interest factor or factors outweigh the financial or other benefits to the corporation or . . . shareholders."); 6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.) (The Iowa Constituency Statute

5

"does not merely require directors to legitimize their consideration of non-shareholder interests by a theory of maximization of corporate profits in the long-run . . . . The Iowa director can, in the acquisition context at least, allow the interests of other corporate constituencies to <u>trump</u> the interests of shareholders."); <u>see also</u> Jonathan D. Springer, <u>Corporate Constituency Statutes: Hollow Hopes and False Fears</u>, 1999 Ann. Surv. Am. L. 85, 99 (1999) ("In Iowa, it is clear that directors may consider interests of constituencies equally with shareholders' interests.").

Under those standards, Plaintiff's allegation that the Board's "refusal to even talk with Couche-Tard [is] in violation of [its] fiduciary duties" falls flat.  (Pet. ¶ 8.)  The Iowa statutes make clear that the Board – having determined that Couche-Tard's offer is not in the best interests of Casey's shareholders or Casey's non-shareholder constituencies – has no obligation to entertain Couche-Tard's overtures or to refrain from blocking them.  (Recommendation Statement (Remsburg Decl.[1] Ex. A) at 20 ("The board believes that the consummation of the Offer would have an adverse impact on Casey's employees, suppliers, creditors, customers and the communities in which Casey's operates.").)[2]  Iowa Code § 490.1108(A)(2) (once a board determines to reject a tender offer based on the "community interest factors" it has "<u>no obligation</u> to facilitate, to remove any barriers to, or to refrain from impeding, the proposal or offer" (emphasis added)).

---

[1] "Remsburg Decl. Ex. __" are exhibits to the August 13, 2010, declaration of Edward W. Remsburg.

[2] On a motion to dismiss, the Court may consider the complaint, any documents incorporated therein and documents in the public record, including SEC filings.  <u>See</u> <u>McAdams</u>, 584 F.3d at 1113 ("[In deciding a 12(b)(6) motion], [t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record."); <u>In re Daktronics, Inc. Sec. Litig.</u>, No. CIV 08-4176, 2010 WL 2332730, at *1 n.1 (D.S.D. June 9, 2010) ("The Court may take judicial notice of SEC filings without converting a motion to dismiss to a motion for summary judgment.").

### B. The Board Is Permitted to Institute Defensive Measures.

Plaintiff alleges that the Board's "adoption of . . . disproportionate [defensive] measures", including a poison pill, "are in violation of their [sic] fiduciary duties". (Pet. ¶ 8.) Plaintiff is wrong. Iowa law expressly authorizes the use of the "poison pill" defense. Iowa Code § 490.624A. The Constituency Statute also expressly authorizes the Board to enact defensive measures designed to "imped[e]" Couche-Tard's hostile bid. See Iowa Code § 490.1108A(2).

Thus, Plaintiff's allegation that Casey's May 27 and June 2 amendments to its employment agreements with various Casey's employees were defensive measures designed to "further entrench and enrich the Board" fails as a matter of law. (Pet. ¶ 38.) Even if the employment agreements were defensive measures, they would be authorized by Iowa law and, therefore, could not form a basis for a breach of fiduciary duty claim. Iowa Code § 490.1108A(2). The same is true of Casey's securities fraud litigation against Couche-Tard, Casey's General Stores, Inc. v. Alimentation Couche-Tard Inc., No. 10-cv-00265-JAJ-TJS (S.D. Iowa filed June 11, 2010) and Casey's decision to pay a dividend to its shareholders (Pet. ¶¶ 6, 40, 41). See Iowa Code § 490.1108A (2).

Moreover, Plaintiff's allegations concerning Casey's May 27 and June 2 employment agreement amendments are simply wrong – those amendments were not defensive measures. Instead, for more than 13 years before those 2010 amendments, the employment agreement for Casey's officers had contained provisions extending employment for two years upon a change of control. (See Casey's General Stores, Inc., Quarterly Report (Form 10-Q) (Remsburg Decl. Ex. B), at Ex. 10.29 (Mar. 14, 1997) ("The Company hereby agrees to continue the Employee in its employ . . . for the period commencing on [a change of control] and ending on . . . the second anniversary of such date . . .".).) The 2010 amendments simply reflected the

7

requirements of applicable federal tax laws and "modifie[d] the definition of a 'Change of Control' to provide that a Change of Control will be said to occur upon the consummation of a merger of the Company or certain other transactions, rather than upon shareholder approval of the same". (Casey's General Stores, Inc., Current Report (Form 8-K) (Remsburg Decl. Ex. C) at 2 (June 2, 2010).)  If anything, those changes are favorable to a hostile acquirer.

In any event, the Iowa legislature has determined to allow defensive measures in exactly this context.  See, e.g., 6 Iowa. Prac., Bus. Orgs. § 28:9 (2009 ed.).  As a result, Plaintiff's claims should be dismissed as a matter of law.  See, e.g., State v. Olsen, 618 N.W.2d 346, 351 (Iowa 2000) ("[O]nce the legislature has spoken, [the court's] role is to give effect to the law as written, not to rewrite it to reflect a policy different from that language." (internal quotation marks omitted)); U.S. Jaycees v. Iowa Civil Rights Comm'n, 427 N.W.2d 450, 455 (Iowa 1988) ("It is not [a court's] function to rewrite a statute.  If changes in a law are desirable from a standpoint of policy or mere practicality, it is for the legislature to enact them . . . ." (citation omitted)).

        C.       **The Board's Decisions Are Protected by the Business Judgment Rule.**

In a futile attempt to avoid the Constituency Statute that bars its claims, Plaintiff conclusorily asserts that the Board did not consider Casey's other constituencies in good faith. (Pet. ¶¶ 5-8.)  That assertion must fail.  The Business Judgment Rule "affords directors the presumption that their decisions are informed, made in good faith, and honestly believed by them to be in the best interests of the company".  Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc., 430 N.W.2d 447, 453 (Iowa 1988).  "The purpose of the [R]ule is to severely limit secondguessing of business decisions which have been made by those whom the corporation has chosen to make them."  Hanrahan v. Kruidenier, 473 N.W.2d 184, 186 (Iowa 1991).  The

8

Business Judgment Rule "has long been codified in Iowa" and "sets precise metes and bounds for judicial interference" in corporate decision-making.  Id.

"[T]he burden is on [plaintiff] to establish facts rebutting the presumption.  If this presumption is not rebutted, a court will not substitute its judgment for that of the board if the [board's] decision can be attributed to any rational business purpose."  MHC Inv. Co. v. Racom Corp., 254 F. Supp. 2d 1090, 1099 (S.D. Iowa 2002) (Delaware law); see also Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 198 F.3d 685, 702 (8th Cir. 1999) ("[D]irectors have the power to control and direct the affairs of the corporation, and in the absence of fraud . . . courts will generally not interfere on behalf of a dissatisfied stockholder with the discretion of the directors on questions of corporate management, policy or business." (applying Kansas's Business Judgment Rule)).

Here, Plaintiff alleges no facts to rebut the presumption of the Business Judgment Rule.  While Plaintiff conclusorily asserts that the directors did not act in good faith, it does not – and cannot – support that assertion with any factual allegations.  Cf. Lewis v. Honeywell, Inc., 1987 WL 14747, at *4 (Del. Ch. July 28, 1987)  ("What is missing in this complaint are nonconclusory factual allegations that would establish that the defendant directors rejected (and refused to negotiate) the Sperry offer without having properly informed themselves of the critical facts. . . . ").

Notably, Plaintiff does not allege that the detailed account of the Board's decision-making process found in Casey's Recommendation Statement is in any way false or

9

incorrect, even though Plaintiff's Petition discusses that document in detail (see Pet. ¶¶ 7, 42).[3] Casey's Recommendation Statement amply demonstrates that the Board seriously, thoughtfully, and rigorously considered the Offer, and determined it to be not in the best interests of Casey's and its constituencies:

- On March 9, 2010, the day Mr. Bouchard sent Couche-Tard's unsolicited proposal, Mr. Myers notified the Board accordingly;

- On March 10, 2010, the Board's Executive Committee met by telephone with its legal advisors at Ahlers & Cooney, P.C. ("Ahlers") to discuss the proposal;

- On March 12 and March 15, 2010, the Executive Committee met by telephone to discuss retention of advisors;

- On March 23, 2010, at a regularly-scheduled meeting, the board met with members of senior management, as well as representatives of Ahlers, Cravath, Swaine & Moore LLP and Goldman Sachs (the "Advisors") to carefully consider and evaluate the proposal;

- On March 25, 2010, the board again met by telephone to consider the proposal;

- On April 5, 2010, the board again met with the Advisors to discuss the proposal;

- On June 6, 2010, the board again met with the Advisors by telephone to consider the commencement of the tender offer. (Casey's Schedule 14D-9 (Remsburg Decl. Ex. A) at 9-15.)

Likewise, Plaintiff does not dispute that Casey's Board met with its Advisors and other experts to discuss and consider Couche-Tard's offer. Under Iowa law, that is more than sufficient for the presumptions of the Business Judgment Rule to apply. See Iowa Code

---

[3] While Plaintiff asserts that the Board did not explain why it made certain determinations (see Pet. ¶ 42), that allegation is belied by the very Recommendation Statement Plaintiff cites, which contains a detailed account of the Board's reasons for deciding to reject the hostile tender offer. (See Recommendation Statement (Remsburg Decl. Ex. A) at 15-20.)

§ 490.830(4) ("In discharging board or committee duties a director, who does not have knowledge that makes reliance unwarranted, is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by [a person with the pertinent expertise]."); Hanrahan, 473 N.W.2d at 186 ("When directors act in good faith in making a business decision, when the decision is reasonably prudent, and when the directors believe it to be in the corporate interest, there can be no liability.")

Plaintiff also asserts, without alleging any facts in support, that the Board members opposed the tender offer to "ensure that they will retain their prestigious and lucrative positions with the Company". (Pet. ¶ 9.) This argument has been soundly rejected as specious and tautological. See Pogostin v. Rice, 480 A.2d 619, 627 (Del. 1984) ("Acceptance of such an argument would condemn any board, which successfully avoided a takeover, regardless of whether that board properly determined that it was acting in the best interests of the shareholders."), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

Plaintiff must allege nonconclusory facts that rebut the presumptions of the Business Judgment Rule in order to avoid dismissal. See Lewis, 1987 WL 14747, at *4. It has not come close to doing so.

## II. PLAINTIFF'S DISCLOSURE CLAIM FAILS AS A MATTER OF LAW.

Plaintiff alleges that Defendants "breached their fiduciary duties of candor [sic]" (Pet. ¶ 46(c)) because Casey's Recommendation Statement "makes material misstatement of fact [sic]" and "fails to disclose material information" (Pet. ¶ 42). This claim apparently is based on certain Delaware cases that, in certain circumstances, have recognized a separate "duty of candor"; however, there are "no Iowa cases expressly recognizing similar disclosure duties". 6 Iowa Prac., Bus. Orgs. § 28:13 (2009 ed.). Thus, any claim for a separate breach of the duty of candor is facially invalid under controlling Iowa law and should be dismissed.

11

Even in Delaware, however, the alleged "duty of candor" does not signify "a unique or special rule of disclosure". Stroud v. Grace, 606 A.2d 75, 84 (Del. 1992). Instead, "[i]t represents nothing more than the well-recognized proposition that directors . . . are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action". Id. Thus, even in Delaware, directors are required to disclose only that "information which a reasonable shareholder would consider important in deciding whether to sell or retain stock". Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (1985). This materiality standard requires:

> "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Id. (quoting TSC Indus. Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

Under this standard, directors are "not required to disclose all available information", just those facts "that would have a significant effect upon a stockholder vote". Stroud, 606 A.2d at 85.

In Golden Cycle, LLC v. Allan, the target company received a hostile bid and filed a recommendation statement, which stated that its board "'has received expressions of interest from other parties which may have an interest in acquiring the Company at a more attractive price'". No. Civ. A. 16301, 1998 WL 276224, at *4 (Del. Ch. May 20, 1998). This statement was later acknowledged by the company to be false – the acquisition price had not been discussed with any other parties. Id. at *8. Nevertheless, the court found that statement was "unlikely to have misled" stockholders and therefore not actionable. Id.

Here, each of the alleged misstatements is far less significant – and far less likely to be material – than those the court found to be insufficient to state a claim in Golden Cycle.

12

First, Plaintiff complains about Casey's statement that the tender offer implies a multiple of 7.0x LTM (Last Twelve Months) EBITDA as compared to a five year average LTM EBITDA for the convenience store sector. (Pet. ¶ 42(a).) Plaintiff does not allege that this statement is in any way false or incorrect. Nor does Plaintiff allege that Casey's misstates the five year average. Instead, Plaintiff alleges that Casey's "does not state why" it used this metric. (Id.) Casey's is not required to disclose why it chose one metric over another. Cf. Stroud, 606 A.2d at 85. Moreover, Plaintiff and other shareholders are free to use any multiple they want to analyze the tender offer and decide whether to tender their stock; Casey's simply (and accurately) disclosed the metric it used.

Second, Plaintiff complains about Casey's disclosure of its belief that the Tender Offer would adversely impact Casey's other constituencies. (Pet. ¶ 42(b).) Plaintiff claims that the Recommendation Statement does not explain "why" Couche-Tard's offer would have an adverse impact on other constituencies. (Id.) This is plainly immaterial: the Board's belief as to the impact of the Offer on Casey's non-shareholder constituencies is irrelevant to a reasonable Casey's shareholder deciding whether to tender his or her shares. Barkan v. Amsted Indus., Inc., 567 A.2d 1279, 1289 (Del. 1989) ("While it need not be shown that an omission or distortion would have made an investor change his overall view of a proposed transaction, it must be shown that the fact in question would have been relevant to him"(emphasis added)).

Third, Plaintiff claims that the Recommendation Statement "implies that Couche-Tard will have difficulty obtaining financing" yet "does not give the reasons for the Board's belief that Couche-Tard will not be able to obtain financing". (Pet. ¶ 42(c).) Plaintiff mischaracterizes the Recommendation Statement. Casey's did not assert that Couche-Tard "will not be able to obtain financing"; instead, Casey's merely repeats Couche-Tard's own statements

13

concerning Couche-Tard's financing situation.  (Recommendation Statement (Remsburg Decl. Ex. A) at 19 ("Couche-Tard merely has indicated . . ."); ("Couche-Tard has stated . . ."); ("Couche-Tard has explicitly acknowledged . . . ").)  Casey's cannot be liable for repeating Couche-Tard's own disclosures.  See also Golden Cycle, 1998 WL 276224 at *9 (rejecting similar claim because offeror had in fact "not secured firm financing for its offer" and therefore "the statement found in the Schedule 14D-9 was true").

## CONCLUSION

For the foregoing reasons, Casey's respectfully requests that the Court dismiss Plaintiff's Petition in its entirety.

August 13, 2010

/s/ Edward W. Remsburg
Edward W. Remsburg (AT0006511)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone:  515/243-7611
Facsimile:  515/243-2149
E-mail: eremsburg@ahlerslaw.com

Robert H. Baron
Michael A. Paskin
J. Wes Earnhardt
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1422
Facsimile:  (212) 474-3700
Email:  rbaron@cravath.com
        mpaskin@cravath.com
        wearnhardt@cravath.com

Electronically filed.

Electronically served on all parties.

| CERTIFICATE OF SERVICE |
| --- |
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on <u>August 13, 2010.</u> |
| **By**    ☐ **U.S. Mail**              ☐ **Fax**  <br>           ☐ **Hand Delivery**        ☐ **Private Carrier**  <br>           ☒ **Electronically through CM-ECF / Email** |
| **Signature** /s/ Amanda G. Wachuta_____ |

15