# EXHIBIT C

# Morningstar® Document Research℠

# FORM 8-K

**CASEYS GENERAL STORES INC - casy**

**Filed: June 02, 2010 (period: May 27, 2010)**

Report of unscheduled material events or corporate changes.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): May 27, 2010

# CASEY'S GENERAL STORES, INC.
**(Exact name of registrant as specified in its charter)**

**Iowa**
**(State or other jurisdiction of incorporation)**

| 0-12788 | 42-0935283 |
|---|---|
| **(Commission File Number)** | **(IRS Employer Identification No.)** |

| One Convenience Blvd., Ankeny, Iowa | 50021 |
|---|---|
| **(Address of principal executive Offices)** | **(Zip Code)** |

**515/965-6100**
**(Registrant's telephone number, including area code)**

**NONE**
**(Former name or former address, if changed since last report)**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CF 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010                                                                                           Powered by Morningstar® Document Research℠

Item 5.02. <u>Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.</u>

On May 27, 2010, Casey's General Stores, Inc. (the "Company") executed and entered into Amended and Restated Employment Agreements (each, an "Agreement") with its executive officers (Messrs. Myers, Handley, Walljasper and Billmeyer) and six other officers. Agreements with two additional officers were executed on June 1, 2010. All executive officers and the other officers executing an Agreement with the Company have previously executed the form of Employment Agreement filed as Exhibit 10.29 to the Form 10-Q for the fiscal quarter ended January 31, 1997 (the "Prior Agreement"). The new form of Agreement, being filed as an Exhibit hereto, (i) modifies the definition of a "Change of Control" to provide that a Change of Control will be said to occur upon the consummation of a merger of the Company or certain other transactions, rather than upon shareholder approval of the same, and (ii) adds a provision allowing the Company to defer any termination payments for six months if the amount payable is determined by the Company to be deferred compensation, the payment of which is required to be delayed pursuant to the sixth-month delay rule of Section 409A of the Internal Revenue Code of 1986, as amended. The Prior Agreement with each individual officer terminated upon execution of the new Agreement.

The Agreement continues to become effective only upon the occurrence of a Change of Control of the Company. In such event, the Agreement provides for the continued employment of the officer for a period of two years following the Change of Control (or until the officer's normal retirement, if sooner), in the same position and with the same duties as the officer had during the 90-day period preceding the Change of Control and at the same or similar location as of immediately prior to the Change of Control. The officer will receive a base salary at a monthly rate at least equal to the highest monthly base salary paid to the officer during the immediately preceding 12-month period. The officer is also entitled to an annual bonus in cash at least equal to the average bonus payable to the officer in respect of the three fiscal years immediately preceding the Change of Control. The officer is also entitled to continue to participate in benefit plans maintained by the Company, including incentive, savings and retirement plans and welfare benefit plans, and to receive other fringe benefits such as use of an automobile and payments of related expenses and vacation pay, each on a basis that is at least as favorable as the most favorable of those in effect during the 90-day period immediately preceding the Change of control.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010                              Powered by Morningstar® Document Research℠

Benefits under the Agreement cease in the event of the death of the officer. Benefits also cease in the event that the officer is deemed to be totally and permanently disabled after a period of at least 26 weeks of disability. Benefits also cease if the Company terminates the officer's employment for "Cause" (defined generally as an act or acts of personal dishonesty, conviction of the officer of a felony, or repeated violations of the officer's obligations to perform the officer's duties if such violations are willful and deliberate by the officer and are not remedied in a reasonable period of time after receipt of notice to cure).

The Agreement continues to allow the officer to terminate employment for "Good Reason" (defined generally as an assignment of duties inconsistent with the officer's position, authority, duties or responsibilities; any breach of the Agreement's provisions relating to the officer's compensation; requiring the officer to be based at a different office or location; any purported termination of employment by the Company other than as permitted by the Agreement; or any failure by the Company to require any successor of the Company to assume the Company's obligations under the Agreement).

In the event of a termination of employment due to the death or disability of the officer, or if the officer terminates employment without Good Reason, the officer's base salary is to be paid through the date of termination, along with a pro rata portion of the annual bonus and any compensation previously deferred by the officer. If the termination of employment occurs because of disability, the officer is also entitled to benefits payable under the disability plan maintained by the Company.

If the Company terminates the officer's employment without Cause or the officer terminates employment for Good Reason, the officer is entitled to receive (i) an amount equal to the sum of (a) the base salary due to the officer through the date of termination, (b) a pro rata bonus, (c) an amount equal to three times the aggregate base salary and most recent bonus of the officer, and (d) any compensation previously deferred by the officer and (ii) a right to continue to participate in health and life insurance plans for the remainder of the two year employment period. To the extent that the total benefits payable to the officer would exceed the "golden parachute" limitations contained in Section 280G of the Internal Revenue Code, however, the benefits will be reduced to the extent that the benefits would not otherwise be deductible to the Company. Termination payments also may be deferred under the new Section 409A provision described above.

The foregoing description of the Agreement is a general description only and is qualified in its entirety by reference to the full text of the Agreement which is being filed as Exhibit 10.29(a) to this Current report on Form 8-K, and is hereby incorporated herein by this reference.

3

Item 9.01. <u>Financial Statements and Exhibits.</u>

    (d)    Exhibits.

    The exhibit accompanying this report is listed in the Exhibit Index attached hereto.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010

Powered by Morningstar® Document Research℠

SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, hereunto duly authorized.

CASEY'S GENERAL STORES, INC.

Date: June 1, 2010

By: /s/ William J. Walljasper

William J. Walljasper
Senior Vice President and Chief Financial Officer

5

EXHIBIT INDEX

The following exhibits are filed herewith:

| **Exhibit** | **Description** |
|---|---|
| 10.29(a) | Form of Amended and Restated Employment Agreement |

6

Exhibit 10.29(a)

FORM OF
AMENDED AND RESTATED EMPLOYMENT AGREEMENT

AMENDED AND RESTATED AGREEMENT ("Agreement") by and between Casey's General Stores, Inc. (the "Company"), and _____ (the "Employee"), dated as of the _____ day of _____, 2010.

Whereas, the Board of Directors of the Company (the "Board"), has determined that it is in the best interests of the Company and its shareholders to assure that the Company will have the continued dedication of the Employee, notwithstanding the possibility, threat, or occurrence of a Change of Control (as defined below) of the Company; and

Whereas, the Board believes it is imperative to diminish the inevitable distraction of the Employee by virtue of the personal uncertainties and risks created by a pending or threatened Change of Control, to encourage the Employee's full attention and dedication to the Company currently and in the event of any threatened or pending Change of Control, and to provide the Employee with compensation arrangements upon a Change of Control which provide the Employee with individual financial security and which are competitive with those of other corporations and, in order to accomplish these objectives, the Board has caused the Company to enter into this Agreement; and

Whereas, the Company and Employee are parties to an Employment Agreement dated _____, 19__, [as amended by a First Amendment to Employment Agreement dated _____, _____] ([together, ]the "Prior Agreement") concerning the subject matter hereof, which the Company and Employee now desire to amend, restate and replace as set forth herein.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1. <u>Certain Definitions</u>. (a) The "Effective Date" shall be the first date during the "Change of Control Period" (as defined in Section l(b)) on which a Change of Control occurs. Anything in this Agreement to the contrary notwithstanding, if the Employee's employment with the Company is terminated prior to the date on which a Change of Control occurs, and it is reasonably demonstrated that such termination (1) was at the request of a third party who has taken steps reasonably calculated to effect a Change of Control or (2) otherwise arose in connection with or anticipation of a Change of Control, then for all purposes of this Agreement the "Effective Date" shall mean the date immediately prior to the date of such termination.

(b) The "Change of Control Period" is the period commencing on the date hereof and ending on the earlier to occur of (i) the second anniversary of such date or (ii) the first day of the month next following the Employee's normal retirement date ("Normal Retirement Date") under the terms of the Casey's General Stores 401(k) Plan or any successor retirement plan (the "Retirement Plan"); <u>provided</u>, <u>however</u>, that commencing on the date one year after the date hereof, and on each annual anniversary of such date (such date and each annual anniversary thereof is hereinafter referred to as the "Renewal Date"), the Change of Control Period shall be automatically extended so as to terminate on the earlier of (x) two years from such Renewal Date or (y) the first day of the month coinciding with or next following the Employee's Normal Retirement Date, unless at least 60 days prior to the Renewal Date the Company shall give notice that the Change of Control Period shall not be so extended.

1

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010    Powered by Morningstar® Document Research℠

2. <u>Change of Control</u>. For the purpose of this Agreement, a "Change of Control" shall mean:

(i) The acquisition (other than from the Company) by any person, entity or "group", within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934 (the "Exchange Act"), (excluding, for this purpose, the Company or its subsidiaries, or any employee benefit plan of the Company or its subsidiaries which acquires beneficial ownership of voting securities of the Company) of beneficial ownership, (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of twenty percent (20%) or more of either the then outstanding shares of Common Stock, no par value, of the Company or the combined voting power of the Company's then outstanding voting securities entitled to vote generally in the election of directors (hereinafter referred to as the "Common Stock"), unless such beneficial ownership was acquired as a result of an acquisition of shares of Common Stock by the Company which, by reducing the number of shares outstanding, increases the proportionate number of shares beneficially owned by such person, entity or "group" to twenty percent (20%) or more of the Common Stock of the Company then outstanding; provided, however, that if a person, entity or "group" shall become the beneficial owner of twenty percent (20%) or more of the Common Stock of the Company then outstanding by reason of share purchases by the Company and shall, after such share purchases by the Company, become the beneficial owner of any additional shares of Common Stock of the Company, then such person, entity or "group" shall be deemed to have met the conditions hereof; or

(ii) Individuals who, as of the date hereof, constitute the Board (as of the date hereof, the "Incumbent Board") cease for any reason to constitute at least a majority of the Board, provided that any person becoming a director subsequent to the date hereof whose election, or nomination for election by the Company's shareholders, was approved by a vote of at least a majority of the directors then comprising the Incumbent Board (other than an election or nomination of an individual whose initial assumption of office is in connection with an actual or threatened election contest relating to the election of the Directors of the Company, as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act) shall be, for purposes of this Agreement, considered as though such person were a member of the Incumbent Board; or

(iii) Consummation of a reorganization, merger, consolidation to which the Company is a party, in each case, with respect to which persons who were the shareholders of the Company immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated company's then outstanding voting securities, or a liquidation or dissolution of the Company or of the sale of all or substantially all of the assets of the Company.

2

3. <u>Employment Period</u>. The Company hereby agrees to continue the Employee in its employ, and the Employee hereby agrees to remain in the employ of the Company, for the period commencing on the Effective Date and ending on the earlier to occur of (a) the second anniversary of such date or (b) the first day of the month coinciding with or next following the Employee's Normal Retirement Date (the "Employment Period").

4. <u>Terms of Employment</u>. (a) <u>Position and Duties</u>. (i) During the Employment Period, (A) the Employee's position (including status, offices, titles and reporting requirements), authority, duties and responsibilities shall be at least commensurate in all material respects with the most significant of those held, exercised and assigned at any time during the 90-day period immediately preceding the Effective Date and (B) the Employee's services shall be performed at the location where the Employee was employed immediately preceding the Effective Date or any office or location less than thirty-five (35) miles from such location.

(ii) During the Employment Period, and excluding any periods of vacation and sick leave to which the Employee is entitled, the Employee agrees to devote reasonable attention and time during normal business hours to the business and affairs of the Company and, to the extent necessary to discharge the responsibilities assigned to the Employee hereunder, to use the Employee's reasonable best efforts to perform faithfully and efficiently such responsibilities.

(b) <u>Compensation</u>. (i) <u>Base Salary</u>. During the Employment Period, the Employee shall receive a base salary ("Base Salary") at a monthly rate at least equal to the highest monthly base salary paid or payable to the Employee by the Company during the twelve-month period immediately preceding the month in which the Effective Date occurs. During the Employment Period, the Base Salary shall be reviewed at least annually and shall be increased at any time and from time to time as shall be substantially consistent with increases in base salary awarded in the ordinary course of business to other key employees of the Company and its subsidiaries. Any increase in Base Salary shall not serve to limit or reduce any other obligation to the Employee under this Agreement. Base Salary shall not be reduced after any such increase.

(ii) <u>Annual Bonus</u>. In addition to Base Salary, the Employee shall be awarded, for each fiscal year during the Employment Period, an annual bonus (an "Annual Bonus") in cash at least equal to the average bonus payable to the Employee from the Company and its subsidiaries in respect of the three fiscal years immediately preceding the fiscal year in which the Effective Date occurs.

(iii) <u>Incentive, Savings and Retirement Plans</u>. In addition to Base Salary and Annual Bonus payable as hereinabove provided, the Employee shall be entitled to participate during the Employment Period in all incentive, savings and retirement plans, practices, policies and programs applicable to other key employees of the Company and its subsidiaries, in each case providing benefits which are the economic equivalent to those in effect or as subsequently amended. Such plans, practices, policies and programs, in the aggregate, shall provide the Employee with compensation, benefits and reward opportunities at least as favorable as the most favorable of such compensation, benefits and reward opportunities provided by the Company for the Employee under such plans, practices, policies and programs as in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as provided at any time thereafter with respect to other key employees of the Company and its subsidiaries.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010     Powered by Morningstar® Document Research℠

(iv) <u>Welfare Benefit Plans</u>. During the Employment Period, the Employee and/or the Employee's family, as the case may be, shall be eligible for participation in and shall receive all benefits under welfare benefit plans, practices, policies and programs provided by the Company and its subsidiaries (including, without limitation, medical, prescription, dental, disability, salary continuance, employee life, group life, accidental death and travel accident insurance plans and programs), at least as favorable as the most favorable of such plans, practices, policies and programs in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee and/or the Employee's family, as in effect at any time thereafter with respect to other key employees of the Company and its subsidiaries.

(v) <u>Expenses</u>. During the Employment Period, the Employee shall be entitled to receive prompt reimbursement for all reasonable expenses incurred by the Employee in accordance with the most favorable policies, practices and procedures of the Company and its subsidiaries in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as in effect at any time thereafter with respect to other key employees of the Company and its subsidiaries.

(vi) <u>Fringe Benefits</u>. During the Employment Period, the Employee shall be entitled to fringe benefits, including the continued use of an automobile and payment of related expenses, in accordance with the most favorable plans, practices, programs and policies of the Company and its subsidiaries in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as in effect at any time thereafter with respect to other key employees of the Company and its subsidiaries.

(vii) <u>Office and Support Staff</u>. During the Employment Period, the Employee shall be entitled to an office or offices of a size and with furnishings and other appointments, and to secretarial and other assistance, at least equal to the most favorable of the foregoing provided to the Employee by the Company and its subsidiaries at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as provided at any time thereafter with respect to other key employees of the Company and its subsidiaries.

(viii) <u>Vacation</u>. During the Employment Period, the Employee shall be entitled to paid vacation in accordance with the most favorable plans, policies, programs and practices of the Company and its subsidiaries as in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as in effect at any time thereafter with respect to other key employees of the Company and its subsidiaries.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010   Powered by Morningstar® Document Research℠

5. <u>Termination</u>. (a) <u>Death or Disability</u>. This Agreement shall terminate automatically upon the Employee's death. If the Company determines in good faith that the Disability of the Employee has occurred (pursuant to the definition of "Disability" set forth below), it may give to the Employee written notice of its intention to terminate the Employee's employment. In such event, the Employee's employment with the Company shall terminate effective on the 30th day after receipt of such notice by the Employee (the "Disability Effective Date"), provided that, within the 30 days after such receipt, the Employee shall not have returned to full-time performance of the Employee's duties. For purposes of this Agreement, "Disability" means disability which, at least 26 weeks after its commencement, is determined to be total and permanent by a physician selected by the Company or its insurers and acceptable to the Employee or the Employee's legal representative (such agreement as to acceptability not to be withheld unreasonably).

(b) <u>Cause</u>. The Company may terminate the Employee's employment for "Cause." For purposes of this Agreement, "Cause" means (i) an act or acts of personal dishonesty taken by the Employee and intended to result in substantial personal enrichment of the Employee at the expense of the Company, (ii) repeated violations by the Employee of the Employee's obligations under Section 4(a) of this Agreement which are demonstrably willful and deliberate on the Employee's part and which are not remedied in a reasonable period of time after receipt of written notice from the Company or (iii) the conviction of the Employee of a felony.

(c) <u>Good Reason</u>. The Employee's employment may be terminated by the Employee for Good Reason. For purposes of this Agreement, "Good Reason" means

(i) the assignment to the Employee of any duties inconsistent in any respect with the Employee's position (including status, offices, titles and reporting requirements), authority, duties or responsibilities as contemplated by Section 4(a) of this Agreement, or any other action by the Company which results in a diminution in such position, authority, duties or responsibilities, excluding for this purpose an isolated, insubstantial and inadvertent action not taken in bad faith and which is remedied by the Company promptly after receipt of notice thereof given by the Employee;

(ii) any failure by the Company to comply with any of the provisions of Section 4(b) of this Agreement, other than an isolated, insubstantial and inadvertent failure not occurring in bad faith and which is remedied by the Company promptly after receipt of notice thereof given by the Employee;

(iii) the Company's requiring the Employee to be based at any office or location other than that described in Section 4(a)(i)(B) hereof, except for travel reasonably required in the performance of the Employee's responsibilities;

5

(iv) any purported termination by the Company of the Employee's employment otherwise than as expressly permitted by this Agreement; or

(v) any failure by the Company to comply with and satisfy Section 11(c) of this Agreement.

For purposes of this Section 5(c), any good faith determination of "Good Reason" made by the Employee shall be conclusive.

(d) Notice of Termination. Any termination by the Company for Cause or by the Employee for Good Reason shall be communicated by Notice of Termination to the other party hereto given in accordance with Section 12(b) of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon, (ii) sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Employee's employment under the provision so indicated and (iii) if the Date of Termination (as defined below) is other than the date of receipt of such notice, specifies the termination date (which date shall be not more than fifteen (15) days after the giving of such notice). The failure by the Employee to set forth in the Notice of Termination any fact or circumstance which contributes to a showing of Good Reason shall not waive any right of the Employee hereunder or preclude the Employee from asserting such fact or circumstance in enforcing his rights hereunder.

(e) Date of Termination. "Date of Termination" means the date of receipt of the Notice of Termination or any later date specified therein, as the case may be; provided, however, that (i) if the Employee's employment is terminated by the Company other than for Cause or Disability, the Date of Termination shall be the date on which the Company notifies the Employee of such termination and (ii) if the Employee's employment is terminated by reason of death or Disability, the Date of Termination shall be the date of death of the Employee or the Disability Effective Date, as the case may be.

6. Obligations of the Company upon Termination.

(a) Death. If the Employee's employment is terminated by reason of the Employee's death, this Agreement shall terminate without further obligations to the Employee's legal representatives under this Agreement, other than those obligations accrued or earned and vested (if applicable) by the Employee as of the Date of Termination, including, for this purpose (i) the Employee's full Base Salary through the Date of Termination at the rate in effect on the Date of Termination or, if higher, at the highest rate in effect at any time from the 90-day period preceding the Effective Date through the Date of Termination (the "Highest Base Salary"), (ii) the product of the Annual Bonus paid to the Employee for the last full fiscal year and a fraction, the numerator of which is the number of days in the current fiscal year through the Date of Termination, and the denominator of which is 365 and (iii) any compensation previously deferred by the Employee (together with any accrued interest thereon) and not yet paid by the Company and any accrued vacation pay not yet paid by the Company (such amounts specified in clauses (i), (ii) and (iii) are hereinafter referred to as "Accrued Obligations"). All such Accrued Obligations shall be paid to the Employee's estate or beneficiary, as applicable, in a lump sum in cash within 30 days of the Date of Termination. Anything in this Agreement to the contrary notwithstanding, the Employee's family shall be entitled to receive benefits at least equal to the most favorable benefits provided by the Company and any of its subsidiaries to surviving families of employees of the Company and such subsidiaries under such plans, programs, practices and policies relating to family death benefits, if any, in accordance with the most favorable plans, programs, practices and policies of the Company and its subsidiaries in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee and/or the Employee's family, as in effect on the date of the Employee's death with respect to other key employees of the Company and its subsidiaries and their families.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010    Powered by Morningstar® Document Research℠

(b) <u>Disability</u>. If the Employee's employment is terminated by reason of the Employee's Disability, this Agreement shall terminate without further obligations to the Employee, other than those obligations accrued or earned and vested (if applicable) by the Employee as of the Date of Termination, including for this purpose, all Accrued Obligations. All such Accrued Obligations shall be paid to the Employee in a lump sum in cash within 30 days of the Date of Termination. Anything in this Agreement to the contrary notwithstanding, the Employee shall be entitled after the Disability Effective Date to receive disability and other benefits at least equal to the most favorable of those provided by the Company and its subsidiaries to disabled employees and/or their families in accordance with such plans, programs, practices and policies relating to disability, if any, in accordance with the most favorable plans, programs, practices and policies of the Company and its subsidiaries in effect at any time during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee and/or the Employee's family, as in effect at any time thereafter with respect to other key employees of the Company and its subsidiaries and their families.

(c) <u>Cause; Other than for Good Reason</u>. If the Employee's employment shall be terminated for Cause, this Agreement shall terminate without further obligations to the Employee other than the obligation to pay to the Employee the Highest Base Salary through the Date of Termination plus the amount of any compensation previously deferred by the Employee (together with accrued interest thereon). If the Employee terminates employment other than for Good Reason, this Agreement shall terminate without further obligations to the Employee, other than those obligations accrued or earned and vested (if applicable) by the Employee through the Date of Termination, including for this purpose, all Accrued Obligations. All such Accrued Obligations shall be paid to the Employee in a lump sum in cash within 30 days of the Date of Termination.

(d) <u>Good Reason; Other Than for Cause or Disability</u>. If, during the Employment Period, the Company shall terminate the Employee's employment other than for Cause, Disability, or death or if the Employee shall terminate his employment for Good Reason:

7

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010

Powered by Morningstar® Document Research℠

(i) the Company shall pay to the Employee in a lump sum in cash within thirty (30) days after the Date of Termination the aggregate of the following amounts:

    A. to the extent not theretofore paid, the Employee's Highest Base Salary through the Date of Termination; and

    B. the product of (x) the Annual Bonus paid to the Employee for the last full fiscal year (if any) ending during the Employment Period or, if higher, the Annual Bonus paid to the Employee for the last full fiscal year prior to the Effective Date (as applicable, the "Recent Bonus") and (y) a fraction, the numerator of which is the number of days in the current fiscal year through the Date of Termination and the denominator of which is 365; and

    C. the product of (x) three and (y) the sum of (i) the Highest Base Salary and (ii) the Recent Bonus; and

    D. in the case of compensation previously deferred by the Employee, all amounts previously deferred (together with any accrued interest thereon) and not yet paid by the Company, and any accrued vacation pay not yet paid by the Company; and

(ii) for the remainder of the Employment Period, or such longer period as any plan program, practice or policy may provide, the Company shall continue benefits to the Employee and/or the Employee's family at least equal to those which would have been provided to them in accordance with the plans, programs, practices and policies described in Section 4(b)(iv) of this Agreement if the Employee's employment had not been terminated, including health insurance and life insurance, in accordance with the most favorable plans, practices, programs or policies of the Company and its subsidiaries during the 90-day period immediately preceding the Effective Date or, if more favorable to the Employee, as in effect at any time thereafter with respect to other key employees and their families, and for purposes of eligibility for retiree benefits pursuant to such plans, practices, programs and policies, the Employee shall be considered to have remained employed until the end of the Employment Period and to have retired on the last day of such period.

    7. <u>Non-exclusivity of Rights</u>. Nothing in this Agreement shall prevent or limit the Employee's continuing or future participation in any benefit, bonus, incentive or other plans, programs, policies or practices, provided by the Company or any of its subsidiaries and for which the Employee may qualify, nor shall anything herein limit or otherwise affect such rights as the Employee may have under any stock option or other agreements with the Company or any of its subsidiaries. Amounts which are vested benefits or which the Employee is otherwise entitled to receive under any plan, policy, practice or program of the Company or any of its subsidiaries at or subsequent to the Date of Termination shall be payable in accordance with such plan, policy, practice or program.

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010  Powered by Morningstar® Document Research℠

8. <u>Full Settlement</u>. The Company's obligation to make the payments provided for in this Agreement and otherwise to perform its obligations hereunder shall not be affected by any set-off, counterclaim, recoupment, defense or other claim, right or action which the Company may have against the Employee or others. In no event shall the Employee be obligated to seek other employment or take any other action by way of mitigation of the amounts payable to the Employee under any of the provisions of this Agreement. The Company agrees to pay, to the full extent permitted by law, all legal fees and expenses which the Employee may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Company or others of the validity or enforceability of, or liability under, any provision of this Agreement or any guarantee of performance thereof (including as a result of any contest by the Employee about the amount of any payment pursuant to Section 9 of this Agreement), plus in each case interest at the applicable Federal rate provided for in Section 7872(f)(2) of the Internal Revenue Code of 1986, as amended (the "Code").

9. <u>Certain Reduction of Payments by the Company</u>. (a) Anything in this Agreement to the contrary notwithstanding, in the event it shall be determined that any payment or distribution by the Company to or for the benefit of the Employee (whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise) (a "Payment") would be nondeductible by the Company for Federal income tax purposes because of Section 280G of the Code, then the aggregate present value of amounts payable or distributable to or for the benefit of the Employee pursuant to this Agreement (such payments or distributions pursuant to this Agreement are hereinafter referred to as "Agreement Payments") shall be reduced to the Reduced Amount. The "Reduced Amount" shall be an amount expressed in present value which maximizes the aggregate present value of Agreement Payments without causing any Payment to be nondeductible by the Company because of Section 280G of the Code. Anything to the contrary notwithstanding, if the Reduced Amount is zero and it is determined further that any Payment which is not an Agreement Payment would nevertheless be nondeductible by the Company for Federal income tax purposes because of Section 280G of the Code, then the aggregate present value of Payments which are not Agreement Payments shall also be reduced (but not below zero) to an amount expressed in present value which maximizes the aggregate present value of Payments without causing any Payment to be nondeductible by the Company because of Section 280G of the Code. For purposes of this Section 9, present value shall be determined in accordance with Section 280G(d)(4) of the Code.

(b) All determinations required to be made under this Section 9 shall be made by KPMG LLP, or such other firm as shall have conducted the most recent audit of the Company's financial statements (the "Accounting Firm"), which shall provide detailed supporting calculations both to the Company and the Employee within 15 business days of the Date of Termination or such earlier time as is requested by the Company and an opinion to the Employee that he has substantial authority not to report any Excise Tax on his Federal income tax return with respect to any Payments. Any such determination by the Accounting Firm shall be binding upon the Company and the Employee. The Employee shall determine which and how much of the Payments shall be eliminated or reduced consistent with the requirements of this Section 9, provided that, if the Employee does not make such determination within ten business days of the receipt of the calculations made by the Accounting Firm, the Company shall elect which and how much of the Payments shall be eliminated or reduced consistent with the requirements of this Section 9 and shall notify the Employee promptly of such election. Within five business days thereafter, the Company shall pay to or distribute to or for the benefit of the Employee such amounts as are then due to the Employee under this Agreement.

9

(c) As a result of the uncertainty in the application of Section 280G of the Code at the time of the initial determination by the Accounting Firm hereunder, it is possible that Payments will have been made by the Company which should not have been made ("Overpayment") or that additional Payments which will not have been made by the Company could have been made ("Underpayment"), in each case, consistent with the calculations required to be made hereunder. In the event that the Accounting Firm, based upon the assertion of a deficiency by the Internal Revenue Service against the Employee which the Accounting Firm believes has a high probability of success determines that an Overpayment has been made, any such Overpayment paid or distributed by the Company to or for the benefit of the Employee shall be treated for all purposes as a loan ab initio to the Employee which the Employee shall repay to the Company together with interest at the applicable federal rate provided for in Section 7872(f)(2) of the Code; provided, however, that no such loan shall be deemed to have been made and no amount shall be payable by the Employee to the Company if and to the extent such deemed loan and payment would not either reduce the amount on which the Employee is subject to tax under Section 1 and Section 4999 of the Code or generate a refund of such taxes. In the event that the Accounting Firm, based upon controlling precedent or other substantial authority, determines that an Underpayment has occurred, any such Underpayment shall be promptly paid by the Company to or for the benefit of the Employee together with interest at the applicable federal rate provided for in Section 7872(f)(2) of the Code.

(d) If, at the time of the Employee's "separation from service" (within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A")), (i) the Employee shall be a "specified employee" (within the meaning of Section 409A and using the identification methodology selected by the Company from time to time) and (ii) the Company shall make a good faith determination that an amount payable hereunder constitutes deferred compensation the payment of which is required to be delayed pursuant to the six-month delay rule set forth in Section 409A in order to avoid taxes or penalties under Section 409A, then the Company (or its affiliate, as applicable) shall not pay such amount on the otherwise scheduled payment date but shall instead accumulate such amount and pay it on the first business day of the seventh (7th) month following such separation from service, without interest.

10. Confidential Information. The Employee shall hold in a fiduciary capacity for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its subsidiaries, and their respective businesses, which shall have been obtained by the Employee during the Employee's employment by the Company or any of its subsidiaries and which shall not be or become public knowledge (other than by acts by the Employee or his representatives in violation of this Agreement). After termination of the Employee's employment with the Company, the Employee shall not, without the prior written consent of the Company, communicate or divulge any such information, knowledge or data to anyone other than the Company and those designated by it. In no event shall an asserted violation of the provisions of this Section 10 constitute a basis for deferring or withholding any amounts otherwise payable to the Employee under this Agreement.

10

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010                                                  Powered by Morningstar® Document Research℠

11. <u>Successors</u>. (a) This Agreement is personal to the Employee and without the prior written consent of the Company shall not be assignable by the Employee otherwise than by will or the laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

(b) This Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns.

(c) The Company will require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Company to assume expressly and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place. As used in this Agreement, "Company" shall mean the Company as hereinbefore defined and any successor to its business and/or assets as aforesaid which assumes and agrees to perform this Agreement by operation of law, or otherwise.

12. <u>Miscellaneous</u>. (a) This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa, without reference to principles of conflict of laws. The captions of this Agreement are not part of the provisions hereof and shall have no force or effect. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

(b) All notices and other communications hereunder shall be in writing and shall be given by hand delivery to the other party or by registered or certified mail, return receipt requested, postage prepaid, addressed as follows: If to the Company, to Casey's General Stores, Inc., P.O. Box 3001, One Convenience Blvd., Ankeny, Iowa 50021, Attn: President; and if to the Employee, to her address appearing on the books of the Company, or to her residence, or to such other address as either party shall have furnished to the other in writing in accordance herewith. Notice and communications shall be effective when actually received by the addressee.

(c) The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(d) The Company may withhold from any amounts payable under this Agreement such Federal, state or local taxes as shall be required to be withheld pursuant to any applicable law or regulation.

11

(e) The Employee's failure to insist upon strict compliance with any provision hereof shall not be deemed to be a waiver of such provision or any other provision thereof.

(f) This Agreement contains the entire understanding of the Company and the Employee with respect to the subject matter hereof. The Prior Agreement is hereby terminated.

(g) The Employee and the Company acknowledge that the employment of the Employee by the Company is "at will", and, prior to the Effective Date, may be terminated by either the Employee or the Company at any time, with or without cause, and with or without prior notice. The Employee acknowledges that this Agreement does not constitute a contract of continued employment for any specified term, or a contract of any type for any benefits or rights of employment, until the Effective Date hereof, and that upon a termination of the Employee's employment prior to the Effective Date, there shall be no further rights under this Agreement.

IN WITNESS WHEREOF, the Employee has hereunto set his or her hand and, pursuant to the authorization from its Board of Directors, the Company as caused these presents to be executed in its name on its behalf, all as of the day and year first above written.

CASEY'S GENERAL STORES, INC.

By: _____
    Robert J. Myers, Chief Executive
    Officer and President

ATTEST:

By: _____
    Brian J. Johnson
    Vice President -Finance and Corporate Secretary

12

Created by Morningstar® Document Research℠
http://documentresearch.morningstar.com

Source: CASEYS GENERAL STORES INC, 8-K, June 02, 2010                    Powered by Morningstar® Document Research℠