# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| KENTUCKY STATE DISTRICT COUNCIL OF CARPENTERS PENSION TRUST FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT J. MYERS, KENNETH H. HAYNIE, JOHNNY DANOS, WILLIAM C. KIMBALL, DIANE C. BRIDGEWATER, JEFFREY M. LAMBERTI, RICHARD A. WILKEY, H. LYNN HORAK, and CASEY'S GENERAL STORES, INC.,<br><br>Defendants. | **Civil Action No. 4:10-cv-00332**<br><br>**ECF CASE** |

## DEFENDANTS' RESISTANCE TO PLAINTIFF'S
## MOTION FOR LIMITED EXPEDITED DISCOVERY

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ ii

Introduction and Summary of Argument ..................................................................................1

Argument ...................................................................................................................................4

I.     THE PSLRA AUTOMATIC STAY OF DISCOVERY APPLIES. ....................................4

II.    PLAINTIFF HAS NOT SHOWN THAT THE STAY SHOULD BE LIFTED...................5

III.   DISCOVERY SHOULD NOT PROCEED BECAUSE THE AMENDED
      PETITION IS FACIALLY INVALID...............................................................................8

Conclusion ................................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. LegalNet, Inc. v. Davis,
   673 F. Supp. 2d 1063 (C.D. Cal. 2009) ...................................................................................5

Bremer Bank, Nat'l Ass'n v. John Hancock Life Ins. Co.,
   No. Civ. 06-1534, 2006 WL 1205604 (D. Minn. May 2, 2006)..........................................6, 11

Colorado River Water Conservation Dist. v. United States,
   424 U.S. 800 (1976)..................................................................................................................2

Dimension Data N. Am., Inc. v. Netstar-1, Inc.,
   226 F.R.D. 528 (E.D.N.C. 2005) .............................................................................................6

Fisher v. Kanas,
   No. 06-CV-1187, 2006 WL 2239038 (E.D.N.Y. Aug. 4, 2006) ..............................................4

Goff v. Harper,
   60 F.3d 518 (8th Cir. 1995) ......................................................................................................7

In re Am. Funds Sec. Litig.,
   493 F. Supp. 2d 1103 (C.D. Cal. 2007) ........................................................................4, 5, 6, 8

In re CFS-Related Sec. Fraud Litig.,
   213 F.R.D. 435 (N.D. Okla. 2003)...........................................................................................4

In re Countrywide Fin. Corp. Derivative Litig.,
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) ...................................................................................4

In re Sunrise Senior Living, Inc. Derivative Litig.,
   584 F. Supp. 2d 14 (D.D.C. 2008)........................................................................................5, 8

In re UnitedHealth Grp. Inc. PSLRA Litig.,
   643 F. Supp. 2d 1094 (D. Minn. 2009).....................................................................................4

Kamen v. Kemper Fin. Servs., Inc.,
   500 U.S. 90 (1991)....................................................................................................................9

KCCP Trust v. City of N. Kan. City,
   432 F.3d 897 (8th Cir. 2005) ....................................................................................................7

Kelly v. Englehart Corp.,
   Nos. 1-241, 99-1807, 2001 WL 855600 (Iowa Ct. App. July 31, 2001) ..................................9

<u>Markewich ex rel. Medtronic, Inc. v. Collins</u>,
    622 F. Supp. 2d 802 (D. Minn. 2009)......................................................................................9

<u>McGinnis v. Iowa Clinic, P.C.</u>,
    697 F. Supp. 2d 1042 (N.D. Iowa 2010)..................................................................................9

<u>Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc.</u>,
    No. 08-1005, 2009 WL 2424643 (Iowa Ct. App. Aug. 6, 2009)..............................................2

<u>Sherman v. Winco Fireworks, Inc.</u>,
    532 F.3d 709 (8th Cir. 2008) .................................................................................................11

<u>Tyrer v. City of South Beloit</u>,
    516 F.3d 659 (7th Cir. 2008) ..............................................................................................3, 8

<u>U.S. ex rel. Hall v. Creative Games Tech., Inc.</u>,
    27 F.3d 572 (8th Cir. 1994) ...................................................................................................11


**Statutes & Rules**

15 U.S.C. § 78u-4(b)(3)(B).................................................................................................4, 5, 6

Fed. R. Civ. P. 15(a)(2)...........................................................................................................11

Fed. R. Civ. P. 19....................................................................................................................11

Fed. R. Civ. P. 23.1(b)(3).........................................................................................................9

Iowa Code § 490.624A ............................................................................................................9

Iowa Code § 490.742 ...............................................................................................................9

Iowa Code § 490.1108A(2)....................................................................................................10


**Other Authorities**

6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.).............................................................................9

H.R. Conf. Rep. No. 104-369 (1995).......................................................................................4

S. Rep. No. 104-98 (1995)........................................................................................................4

Defendants Casey's General Stores, Inc. ("Casey's") and Robert J. Myers, Kenneth H. Haynie, Johnny Danos, William C. Kimball, Diane C. Bridgewater, Jeffrey M. Lamberti, Richard A. Wilkey and H. Lynn Horak (the "Board", together with Casey's, "Defendants") respectfully submit this Memorandum of Law in resistance to Plaintiff's Motion for Limited Expedited Discovery (Dkt. No. 6).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's Amended Petition brings claims under the Securities Exchange Act of 1934 ("Exchange Act") and is therefore subject to the automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Plaintiff has not demonstrated that lifting the stay is necessary to prevent undue prejudice to it.  To the contrary, the relief that Plaintiff seeks does not warrant expedited proceedings.  Additionally, discovery should not proceed because Plaintiff's Amended Petition is incurably defective on its face.  Plaintiff's motion should be denied.

On April 9, 2010, Alimentation Couche-Tard Inc. ("Couche-Tard") publicly announced its intent to acquire Casey's for $36 per share. (Casey's Schedule 14D-9 (Dkt. No. 7-3) at 12-13.)  Later that same day, Casey's Board publicly rejected Couche-Tard's offer, which it previously had determined to be inadequate and not in the best interests of the Company. (See id. at 10-11.)  On June 2, 2010, Couche-Tard commenced a hostile tender offer to purchase all outstanding shares of Casey's common stock for $36 per share. (Id. at 15.)  Because the hostile tender offer was made on the same economic terms as Couche-Tard's earlier bid – which the Board had rejected as inadequate – the Board recommended that Casey's shareholders reject the tender offer. (Id.)  The Board also concluded that Couche-Tard's tender offer was not in the best interest of the Company's shareholders, employees, suppliers, customers, creditors or the communities in which Casey's operates. (Id. at 20.)

Three weeks after Casey's first publicly rejected Couche-Tard's bid, on April 28, 2010, Vern Mercier filed a purported shareholder class action suit against Casey's and the Board in the Iowa District Court for Polk County. (Mercier Pet. (Dkt. No. 7-4).) On June 29, 2010, Richard Howie filed a purported shareholder class action suit against Casey's and the Board in the Iowa District Court for Polk County. (Howie Pet. (Dkt. No. 7-5).) After a hearing, the Iowa District Court for Polk County consolidated the Mercier and Howie cases. (Consolidation Order (Remsburg Decl. Ex. A[1]).)

On July 21, 2010 – nearly three months after the filing of the first state court petition – Plaintiff filed a purported shareholder class action petition in this Court that is essentially identical to the consolidated state litigation.[2] (Pet. (Dkt. No. 1).) Defendants promptly filed a Motion to Stay Federal Proceedings Pending the Resolution of Parallel State Proceedings (the "First Colorado River Motion" (Dkt. No. 7)), asking this Court to abstain from exercising its jurisdiction in favor of the pending Iowa litigation, under well-established Supreme Court and Eighth Circuit precedents. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976); Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc., 697 F. Supp. 2d 1042, 1047-48 (N.D. Iowa 2010). Defendants also filed a motion to dismiss Plaintiff's claims on the ground that Plaintiff's claims are barred by Iowa statutory law. ("First Motion to Dismiss" (Dkt. No. 15).)

---

[1] "Remsburg Decl. Ex. __" are exhibits to the August 27, 2010, declaration of Edward W. Remsburg.

[2] Plaintiff's lack of independent investigation into this matter is evident from the instant motion, which seeks to depose "Ronald M. Lamb, Casey's Board Chairman". (Discovery Br. (Dkt. No. 6-1) at 16.) However, Mr. Lamb passed away prior to the filing of Plaintiff's Petition. (Colo. River Br. (Dkt. No. 7-1) at 5 n.4.)

Plaintiff filed the instant Motion for Limited Expedited Discovery on August 5, 2010, seeking discovery "in support of its forthcoming motion for preliminary injunction". (Discovery Br. (Dkt. No. 6-1) at 15.)  Despite its assertion that "time is of the essence" (id. at 12), Plaintiff waited nearly three weeks before filing its motion for preliminary injunction on August 25, 2010 (Dkt. No. 22).  That motion asks the Court to "enjoin[] the Company's Board from enforcing" (PI Br. (Dkt. No. 22-1) at 19) certain provisions of a Note Purchase Agreement, filed with the Securities and Exchange Commission on August 10, 2010 (Dkt. 22-5).  Plaintiff's claim for relief does not make sense.  The Board does not have discretion whether to "enforce" the change of control provisions at issue.  Those provisions are contractual rights belonging to the counterparties to the Note Purchase Agreement – the Note Holders who purchased the notes.  Yet, Plaintiff has failed even to join the Note Holders in this action.

On August 20, 2010 – in a transparent attempt to circumvent Defendants' meritorious motion to stay pursuant to Colorado River – Plaintiff filed an Amended Petition based on substantially the same allegations as its original Petition but adding claims under Sections 14(a) and 20(a) of the Exchange Act.[3]  (Amended Pet. (Dkt. No. 20) ¶¶ 1, 71-84.)  Now that Plaintiff has invoked the federal securities laws, however, discovery must be stayed for an additional reason:  the PSLRA automatic stay of discovery applies until the Court has ruled on Defendants' motion to dismiss.[4]  Plaintiff has not established that lifting the stay is necessary to

---

[3] Plaintiff's attempt to avoid Defendants' stay motion should be rejected.  See Tyrer v. City of S. Beloit, 516 F.3d 659, 663 n.2 (7th Cir. 2008) (district court correctly "refused to allow [plaintiff] to circumvent the stay" under Colorado River "by amending his federal complaint").

[4] Following the filing of the Amended Petition, and Plaintiff's request to file the Second Amended Petition, in order to avoid confusion and the filing of duplicative motions and briefs on the same topic, the Parties have agreed that:  (1) Defendants will withdraw, without prejudice, the First Motion to Dismiss and the First Colorado River Motion; (2) if the Court grants Plaintiff's request to file the Second Amended Petition, Defendants' time to move against or

preserve evidence or to prevent undue prejudice to it.  Accordingly, the Court should deny Plaintiff's motion.

## ARGUMENT

### I.     THE PSLRA AUTOMATIC STAY OF DISCOVERY APPLIES.

The PSLRA provides that, "[i]n any private action arising under [the Exchange Act], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss". 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). Plaintiff's Amended Petition asserts claims arising under Sections 14(a) and 20(a) of the Exchange Act. (Amended Pet. (Dkt. No. 20) ¶¶ 1, 71-84.) Therefore, the PSLRA's automatic stay applies to this action. See In re UnitedHealth Grp. Inc. PSLRA Litig., 643 F. Supp. 2d 1094, 1097 (D. Minn. 2009) (automatic stay applies to claims brought under Sections 14(a) and 20(a)); In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (claims brought under Sections 14(a) and 20(a) "are clearly subject to the stay").

Congress enacted the PSLRA to alleviate the burden on securities class action defendants of engaging in discovery before a court has tested the legal sufficiency of the petition. See S. Rep. No. 104-98, at 14 (1995); H.R. Conf. Rep. No. 104-369, at 37 (1995). Consequently, courts have applied the PSLRA automatic stay of discovery where, as here, a motion to dismiss was anticipated. In re Am. Funds Sec. Litig., 493 F. Supp. 2d 1103, 1105 (C.D. Cal. 2007); Fisher v. Kanas, No. 06-CV-1187, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006); In re CFS-Related Sec. Fraud Litig., 213 F.R.D. 435, 444 (N.D. Okla. 2003); see also

---

answer the Second Amended Petition will be 14 days after the Court's order granting Plaintiff's request to file the Second Amended Petition; and (3) if the Court denies Plaintiff's request to file the Second Amended Petition, Defendants' time to move against or answer the Amended Petition will be 14 days after the Court's order denying Plaintiff's request to file the Second Amended Petition.

UnitedHealth Grp., 643 F. Supp. 2d at 1097 ("discovery in this matter was automatically stayed" prior to defendants' filing their motion to dismiss). In American Funds, the court held that the stay of discovery applied even before plaintiffs filed their consolidated complaint. 493 F. Supp. 2d at 1105. Here, Plaintiff already has filed its Amended Petition, and Defendants' motion to dismiss is forthcoming. The Court should deny Plaintiff's motion and issue a stay of discovery pending a ruling on Defendants' forthcoming motion to dismiss the Amended Petition.

## II.  PLAINTIFF HAS NOT SHOWN THAT THE STAY SHOULD BE LIFTED.

Plaintiff has not established that a statutory exception to the stay of discovery applies. Under the PSLRA, a court may lift the automatic stay <u>only if</u> it finds "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to" the moving party. 15 U.S.C. § 78u-4(b)(3)(B). That Plaintiff purports to seek discovery in connection with a motion for preliminary injunction does not affect the analysis. "[E]xpedited discovery is not automatically granted merely because a party seeks a preliminary injunction." Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). Rather, "a stay under the PSLRA cannot be lifted absent a showing of" one of the statutory exceptions. In re Sunrise Senior Living, Inc. Derivative Litig., 584 F. Supp. 2d 14, 17 (D.D.C. 2008). Because Plaintiff has not shown a need to preserve evidence nor a risk of undue prejudice, the Court should not disturb the automatic stay. Id. at 19; Am. Funds, 493 F. Supp. 2d at 1107.[5]

First, Plaintiff has not even alleged (let alone established) that "the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken

---

[5] Plaintiff's attempt to shift the burden to Defendants to show that expedited discovery would be burdensome (Discovery Br. (Dkt. No. 6-1) at 14) is wrong as a matter of law. See Sunrise Senior Living, 584 F. Supp. 2d at 17. The burden remains squarely on Plaintiff, "even if lifting the stay may cause little to no burden on a defendant to produce the requested documents". Id.

now". Dimension Data N. Am., Inc. v. NetStar-1, Inc., 226 F.R.D. 528, 532 (E.D.N.C. 2005); Am. Funds, 493 F. Supp. 2d at 1105.

Second, Plaintiff has not shown any circumstances that would cause it "undue prejudice" if discovery is stayed until the motion to dismiss is decided. 15 U.S.C. § 78u-4(b)(3)(B). Indeed, despite its claim of urgency, Plaintiff waited nearly three weeks after filing its motion for expedited discovery to file a motion for preliminary injunction. Plaintiff's unreasonable delay in seeking a preliminary injunction bars expedited relief. See Bremer Bank, Nat'l Ass'n v. John Hancock Life Ins. Co., No. Civ. 06-1534, 2006 WL 1205604, at *2 (D. Minn. May 2, 2006).

Moreover, Plaintiff's claims simply do not warrant expedited relief. The operative pleading seeks equitable relief requiring the Board to act in a manner that purportedly will maximize shareholder value. (Amended Pet. (Dkt. No. 20) at 9, 26-27.) Even if Plaintiff were entitled to that relief (and it is not), there is no reason why it needs to be granted immediately. For example, Plaintiff asks that this Court "enjoin[] the Individual Defendants from . . . instituting unreasonable and disproportionate defensive measures"; "[i]nvalidat[e] the amendments to the employment agreements"; and "impos[e] a constructive trust, in favor of plaintiff and members of the Class". (Id. at 26-27.) Each of those remedies will be available in a month – or a year. See Dimension Data, 226 F.R.D. at 532.

Plaintiff's belated motion for preliminary injunction does not change the result. Plaintiff asserts in that motion that, pursuant to the Note Purchase Agreement, "if the shareholders choose to elect other directors, the Company will . . . automatically default on its loans". (PI Br. (Dkt. No. 22-1) at 1.) That is wrong. There is nothing "automatic" triggered by the Note Purchase Agreement. Rather, within five business days of learning that a majority of

6

the current directors have not been re-elected, the Company must make an offer to the Note Holders to repurchase the notes. (Note Purchase Agreement (Dkt. No. 22-5) § 8.7(a).) In connection with making that offer, the Company also sets the payment date (i.e., the date on which the Note Holders would get paid if they accept the change of control offer). (Id.) The payment date must be not less than 20 business days and not more than 40 business days after the date of the offer. (Id. § 8.7(b).) Thus, in order for the Company to have to make payments pursuant to the Note Purchase Agreement, (1) Couche-Tard would have to succeed in replacing at least a majority of the current directors with its nominees; (2) the Note Holders would have to accept the change of control offer; and (3) up to 40 business days would have to pass from the date of the offer. (Id. § 8.7(a), (b), (g).) Of course, it is entirely speculative that Couche-Tard will succeed in replacing any, let alone a majority, of the current board members with its nominees. Until that time, there is no risk of harm to Plaintiff – and therefore no threat of "undue prejudice" warranting expedited discovery – from the Note Purchase Agreement. See, e.g., KCCP Trust v. City of N. Kan. City, 432 F.3d 897, 900 (8th Cir. 2005) (motion for injunctive relief was not ripe where threatened harm could not occur without a public vote); Goff v. Harper, 60 F.3d 518, 521 (8th Cir. 1995).

In any event, any motion for injunctive relief (and concomitant discovery) could be asserted during the 25 to 45 business day window between the change of control and the date on which the Company actually might be required to make payments to the Note Holders, if any, that elect to have their Notes repurchased. Even if Couche-Tard is successful in replacing a majority of the current directors and the Company must make an offer to repurchase the notes (and the Note Holders accept the offer), the most likely result is that the Company would refinance the Notes. Companies routinely refinance debt and, in the event of a change of control,

7

the Company would have up to 45 business days to do so. That scenario certainly does not warrant expedited relief. There is no justification for the frantic schedule Plaintiff suggests.

For all of these reasons, Plaintiff has not demonstrated that expedited discovery is necessary to prevent "undue prejudice". Sunrise Senior Living, 584 F. Supp. 2d at 18-19; Am. Funds, 493 F. Supp. 2d at 1106-07.

Third, Plaintiff's reliance on the Order permitting limited expedited discovery in Casey's General Stores, Inc. v. Alimentation Couche-Tard Inc., Civil Action No. 4:10-cv-00265-JAJ-TJS (S.D. Iowa July 7, 2010) ("Couche-Tard Case") (Couche-Tard Case Dkt. No. 28), is misplaced. In the Couche-Tard litigation, the PSLRA stay of discovery did not apply to Casey's claims because Couche-Tard did not move to dismiss those claims, but chose to answer instead. (Couche-Tard Answer (Couche-Tard Case Dkt. No. 13).) Here, on the other hand, Defendants have already filed one motion to dismiss and have clearly indicated their intent to move to dismiss the Amended Petition. Because the legal sufficiency of Plaintiff's claims has not been sustained, discovery should not proceed. See Am. Funds, 493 F. Supp. 2d at 1105.

## III. DISCOVERY SHOULD NOT PROCEED BECAUSE THE AMENDED PETITION IS FACIALLY DEFECTIVE.

Discovery also should not proceed because Plaintiff's petition is incurably defective on its face.[6] The purpose of the PSLRA is to alleviate the burden on defendants of engaging in discovery before a court has determined whether the petition states a claim upon which relief may be granted. Plaintiff's Exchange Act claims are frivolous, and were brought solely to circumvent abstention under Colorado River. See Tyrer, 516 F.3d at 663 n.2. Moreover, Plaintiff fails to state a claim for breach of fiduciary duty because (1) the petition

---

[6] As indicated in note 4 supra, Defendants intend to move to dismiss the operative pleading pursuant to the schedule agreed to by the parties.

8

asserts derivative claims that must be dismissed for failure to make a demand on the board of directors; (2) the Iowa Takeover statutes specifically bar Plaintiff's breach of fiduciary duty claims; and (3) Plaintiff has failed to join all necessary parties. Accordingly, discovery should not proceed.

First, Plaintiff's claims are derivative – notwithstanding Plaintiff's failure to characterize them as such – because Plaintiff asserts that its claims are brought "on behalf of holders of common stock of Casey's" (Amended Pet. (Dkt. No. 20) ¶ 1) and does not allege that the Board breached any duty specially owed to it, as distinct from any other shareholder. See McGinnis v. Iowa Clinic, P.C., No. 08-1005, 2009 WL 2424643, at *3 (Iowa Ct. App. Aug. 6, 2009); Kelly v. Englehart Corp., Nos. 1-241, 99-1807, 2001 WL 855600, at *9 (Iowa Ct. App. July 31, 2001). It is black-letter law that, before bringing a derivative suit, a shareholder must first make a demand on the board of directors asking the corporation to take appropriate action. Fed. R. Civ. P. 23.1(b)(3). Here, the demand requirement is governed by Iowa law because Casey's is an Iowa corporation. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). Cf. Markewich ex rel Medtronic, Inc. v. Collins, 622 F. Supp. 2d 802, 807 (D. Minn. 2009) (dismissing complaint for failure to make a demand under Minnesota law). Iowa law mandates that a plaintiff make a demand on the board, and the legislature has amended the Iowa Business Corporations Act to eliminate any exceptions to the demand requirement. Iowa Code § 490.742; 6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.) (explaining that Section 490.742 mandates "a 'universal demand' requirement" in Iowa). Thus, under Iowa law, Plaintiff's petition is facially invalid because Plaintiff has made no demand on Casey's Board.

Second, the Iowa Takeover statutes specifically bar Plaintiff's breach of fiduciary duty claims. Indeed, Iowa law expressly authorizes the use of the "poison pill" defense (Iowa

9

Code § 490.624A), and the Constituency Statute expressly authorizes the Board to enact defensive measures designed to "imped[e]" Couche-Tard's hostile bid (Iowa Code § 490.1108A(2)). Thus, the adoption of defensive measures cannot form the basis of a breach of fiduciary duty claim.

Moreover, although the Board is not required to maximize shareholder value in this context, it nevertheless has done so. The Note Purchase Agreement, taken as a whole, and the Company's recapitalization plan (which is being financed with the proceeds of the Notes) are beneficial to the Company's shareholders. The change of control provisions are only one aspect of a larger, negotiated transaction and are part of the consideration for the extraordinarily favorable financing terms in the Note Purchase Agreement (which Casey's believes could not have been obtained without providing protections to the lenders in the event of a change of control). Thus, the change of control provisions are enabling the Company to repurchase approximately 25% of its outstanding shares at a price higher than Couche-Tard has been willing to pay – and to do so at comparatively modest cost to the Company, thereby enhancing the value of the remaining shares. The change of control provisions are not defensive measures and should not be read in isolation, but must be considered in the context of the entire Note Purchase Agreement and the Company's recapitalization plan. Read as a whole, the Note Purchase Agreement, and the financing provided thereby, indisputably benefits shareholders.

Third, the Amended Petition is facially invalid because Plaintiff has failed to join all necessary parties. Plaintiff's motion for preliminary injunction asks the Court to enjoin the Board from "enforcing" the change of control provisions in the Note Purchase Agreement. But it is the Note Holders, not Casey's or the Board, that have the right to "enforce" the change of control provisions. Plaintiff has not even joined the Note Holders in this action. Plaintiff's

motion for preliminary injunction cannot possibly even be entertained in the Note Holders' absence, because Plaintiff's motion implicates their contractual rights. See Fed. R. Civ. P. 19; U.S. ex rel. Hall v. Creative Games Tech., Inc., 27 F.3d 572 (table), at *1 (8th Cir. 1994) ("It is simply inconceivable to us that a suit claiming that a contract is invalid should be allowed to proceed in the absence of all parties to the contract.").

In order to join the Note Holders, Plaintiff must seek leave of this Court to amend its pleading. Plaintiff has already amended its pleading once and Defendants have informed Plaintiff that they do not consent to further amendment. See Fed. R. Civ. P. 15(a)(2). Leave to amend is not an "absolute right", and the Court may properly deny leave to amend where there is "undue delay [or] bad faith". See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). Here, Plaintiff has not even sought leave to amend its pleading to join the Note Holders (let alone been granted leave to amend) despite moving for expedited discovery and for preliminary injunction implicating the Note Holders' contractual rights. See Bremer Bank, 2006 WL 1205604, at *3. Plaintiff's "undue delay", its proposed pleading of derivative claims without having made prior demand on Casey's Board, which is mandatory under Iowa law, its proposed pleading of claims that are facially barred by the applicable Iowa statutes and its failure to join necessary parties all warrant denial of leave to amend and dismissal of the Amended Petition.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Limited Expedited Discovery.

August 27, 2010

/s/ Edward W. Remsburg
Edward W. Remsburg (AT0006511)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone:  515/243-7611
Facsimile:  515/243-2149
E-mail: eremsburg@ahlerslaw.com

Robert H. Baron
Michael A. Paskin
J. Wes Earnhardt
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1422
Facsimile:  (212) 474-3700
Email:  rbaron@cravath.com
          mpaskin@cravath.com
          wearnhardt@cravath.com

Electronically filed.

Electronically served on all parties.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on **August 27, 2010.**

| By | ☐ U.S. Mail | ☐ Fax |
|---|---|---|
|  | ☐ Hand Delivery | ☐ Private Carrier |
|  | ☒ Electronically through CM-ECF / Email | |

Signature  /s/ Amanda G. Wachuta