# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

KENTUCKY STATE DISTRICT COUNCIL OF
CARPENTERS PENSION TRUST FUND, on behalf of
itself and all others similarly situated,

Plaintiff,

v.

ROBERT J. MYERS, KENNETH H. HAYNIE,
JOHNNY DANOS, WILLIAM C. KIMBALL, DIANE
C. BRIDGEWATER, JEFFREY M. LAMBERTI,
RICHARD A. WILKEY, H. LYNN HORAK, and
CASEY'S GENERAL STORES, INC.,

Defendants.

Civil Action No. 4:10-cv-00332

ECF CASE

## DEFENDANTS' RESISTANCE TO PLAINTIFF'S
## MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................... ii

Introduction and Summary of Argument ....................................................................1

The Iowa Statutory Framework ..................................................................................5

Argument ....................................................................................................................7

I.      APPLICABLE LEGAL STANDARDS. ..........................................................7

II.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY
        DUTY. ..............................................................................................................8

        A.      Plaintiff's Breach of Fiduciary Duty Claims Are Facially Invalid for
                Failure To Make a Pre-Suit Demand on Casey's Board. ..........................8

        B.      The Iowa Takeover Statutes Specifically Bar Plaintiff's Claims. .........12

                1.      The Board Has No Duty Under Iowa Law to Maximize Shareholder
                        Value. ........................................................................................13

                2.      The Board Is Permitted to Institute Defensive Measures. .........14

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING
        BREACH OF FIDUCIARY DUTY. ...............................................................16

Conclusion ...............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009)................................................................................7, 8, 13

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)..........................................................................................7, 8

Bremer Bank, Nat'l Ass'n v. John Hancock Life Ins. Co.,
   No. Civ. 06-1534, 2006 WL 1205604 (D. Minn. May 2, 2006)................................7

Brown v. Kerkhoff,
   504 F. Supp. 2d 464 (S.D. Iowa 2007) ..............................................................7, 8

CIVCO Med. Instruments Co. v. Protek Med. Prods., Inc.,
   231 F.R.D. 555 (S.D. Iowa 2005) ...........................................................................7

Cohen v. Berkshire Hathaway, Inc.,
   No. CL 81833 (Iowa Dist Ct., Polk County Aug. 4, 2000) ....................................10

Colorado River Water Conservation Dist. v. United States,
   424 U.S. 800 (1976).........................................................................................2, 3

DuVall v. Moore,
   276 F. Supp. 674 (N.D. Iowa 1967).......................................................................11

In re First Interstate Bancorp Consol. S'holders Litig.,
   729 A.2d 851 (Del. Ch. 1998),
   aff'd sub nom. Bradley v. First Interstate Bancorp, 748 A.2d 913 (Del. 2000) ......11

In re NYMEX S'holder Litig.,
   C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051 (Del. Ch. Sept. 30, 2009)............10, 11

Kamen v. Kemper Fin. Servs., Inc.,
   500 U.S. 90 (1991).................................................................................................8

Kelly v. Englehart Corp.,
   Nos. 1-241, 99-1807, 2001 WL 855600 (Iowa Ct. App. July 31, 2001) ...................9

Markewich ex rel Medtronic, Inc. v. Collins,
   622 F. Supp. 2d 802 (D. Minn. 2009)......................................................................9

McAdams v. McCord,
   584 F.3d 1111 (8th Cir. 2009) ...............................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

McGinnis v. Iowa Clinic, P.C.,
   No. 08-1005, 2009 WL 2424643 (Iowa Ct. App. Aug. 6, 2009) ........................................9, 11

Nw. Inv. Corp. v. Wallace,
   741 N.W.2d 782 (Iowa 2007) ................................................................................................10

Pogostin v. Rice,
   480 A.2d 619 (Del. 1984),
   overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ..........................15

Samuels Group, Inc. v. Hatch Grading & Contracting, Inc.,
   697 F. Supp. 2d 1042 (N.D. Iowa 2010) ..................................................................................2

Sherman v. Winco Fireworks, Inc.,
   532 F.3d 709 (8th Cir. 2008) ...................................................................................................7

State v. Olsen,
   618 N.W.2d 346 (Iowa 2000) ...........................................................................................11, 16

Tubbs v. United Central Bank, N.A.,
   451 N.W.2d 177 (Iowa 1990) .................................................................................................17

Tyrer v. City of S. Beloit,
   516 F.3d 659 (7th Cir. 2008) ...................................................................................................3

U.S. Jaycees v. Iowa Civil Rights Comm'n,
   427 N.W.2d 450 (Iowa 1988) ...........................................................................................11, 16

United States ex rel. Joshi v. St. Luke's Hosp., Inc.,
   441 F.3d 552 (8th Cir. 2006) ...................................................................................................7

Van Baale v. City of Des Moines,
   550 N.W.2d 153 (Iowa 1996) (Iowa law) ..............................................................................11

Watts v. Des Moines Register & Tribune,
   525 F. Supp. 1311 (S.D. Iowa 1981) .....................................................................................11

Weltzin v. Nail,
   618 N.W.2d 293 (Iowa 2000) ..................................................................................................9

Zoltek Corp. v. Structural Polymer Group,
   592 F.3d 893 (8th Cir. 2010) ...................................................................................................8

Zutz v. Nelson,
   601 F.3d 842 (8th Cir. 2010) .............................................................................................7, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Statutes & Rules**

Fed. R. Civ. P. 23.1(b)(3) ............................................................................................8, 16

Iowa Code § 490.624A ................................................................................................6, 14

Iowa Code § 490.742 ...........................................................................................4, 6, 9, 16

Iowa Code § 490.1108A ..............................................................................5, 6, 10, 13, 15

Securities Exchange Act of 1934 ..............................................................................1, 3, 4

**Other Authorities**

6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.) .................................................................5, 9

6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.) ...............................................................6, 13

Jonathan D. Springer, <u>Corporate Constituency Statutes: Hollow Hopes and False Fears</u>,
    1999 Ann. Surv. Am. L. 85, 99 (1999) ...................................................................13

Restatement (Second) of Torts § 876 ...........................................................................17

Defendants Casey's General Stores, Inc. ("Casey's") and Robert J. Myers, Kenneth H. Haynie, Johnny Danos, William C. Kimball, Diane C. Bridgewater, Jeffrey M. Lamberti, Richard A. Wilkey and H. Lynn Horak (the "Board", together with Casey's, "Defendants") respectfully submit this Memorandum of Law in resistance to Plaintiff's Motion for Leave to Amend (Dkt. No. 24).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Nearly three months after the first Casey's shareholder filed a state law breach of fiduciary duty claim against Casey's and the Board in Iowa state court, Plaintiff filed the first petition in this action, which asserted substantially similar state law breach of fiduciary duty claims against Casey's and the Board.  In an attempt to avoid abstention in favor of the earlier-filed state court litigation, Plaintiff filed an amended petition on August 20, 2010, adding deficient federal law claims under the Securities Exchange Act of 1934.  Now, in a further attempt to keep this case alive in federal court, Plaintiff requests leave to amend its petition a second time to add 32 defendants and a new claim for aiding and abetting breach of fiduciary duty.  Any amendment, however, would be futile because all of Plaintiff's claims are incurably defective on their face.  Iowa law requires that Plaintiff make a demand upon the Board before filing claims, like those here, that are derivative in nature – there is <u>no</u> exception to that requirement.  Plaintiff has not made such a demand.  Moreover, Iowa statutory law expressly rejects the legal premise of Plaintiff's petition.  Plaintiff's Motion for Leave to Amend should be denied.

On April 9, 2010, Alimentation Couche-Tard Inc. ("Couche-Tard") publicly announced its intent to acquire Casey's for $36 per share.  (Schedule 14D-9 (Dkt. No. 7-3) at 12-13.)  Later that same day, Casey's Board publicly rejected Couche-Tard's offer, which it previously had determined to be inadequate and not in the best interests of the Company.  (<u>See</u>

id. at 10-11.)  On June 2, 2010, Couche-Tard commenced a hostile tender offer to purchase all outstanding shares of Casey's common stock for $36 per share.  (Id. at 15.)  Because the hostile tender offer was made on the same economic terms as Couche-Tard's earlier bid – which the Board had rejected as inadequate – the Board recommended that Casey's shareholders reject the tender offer.  (Id.)  The Board also concluded that Couche-Tard's tender offer was not in the best interest of the Company's shareholders, employees, suppliers, customers, creditors or the communities in which Casey's operates.  (Id. at 20.)

Three weeks after Casey's first publicly rejected Couche-Tard's bid, on April 28, 2010, Vern Mercier filed a purported shareholder class action suit against Casey's and the Board in the Iowa District Court for Polk County.  (Mercier Pet. (Dkt. No. 7-4).)  On June 29, 2010, Richard Howie filed a purported shareholder class action suit against Casey's and the Board in the Iowa District Court for Polk County.  (Howie Pet. (Dkt. No. 7-5).)  After a hearing, the Iowa District Court for Polk County consolidated the Mercier and Howie cases.  (Consolidation Order (Dkt. 23-1, Ex. A).)

On July 21, 2010 – nearly three months after the filing of the first state court petition – Plaintiff commenced an action in this Court essentially identical to the consolidated state litigation.  (Pet. (Dkt. No. 1).)  Defendants promptly filed a Motion to Stay Federal Proceedings Pending the Resolution of Parallel State Proceedings (the "First Colorado River Motion" (Dkt. No. 7)), asking this Court to abstain from exercising its jurisdiction in favor of the pending Iowa litigation, under well-established Supreme Court and Eighth Circuit precedents. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976); Samuels Group, Inc. v. Hatch Grading & Contracting, Inc., 697 F. Supp. 2d 1042, 1047-48 (N.D. Iowa 2010).  Defendants also filed a motion to dismiss Plaintiff's petition, on the ground that the

claims asserted therein are barred by Iowa statutory law.  ("First Motion to Dismiss" (Dkt. No. 15).)  On August 5, 2010, Plaintiff filed a Motion for Limited Expedited Discovery (Dkt. No. 6).

On August 20, 2010 – in a transparent attempt to circumvent Defendants' meritorious motion to stay pursuant to <u>Colorado River</u> – Plaintiff filed an Amended Petition. The Amended Petition is based on substantially the same allegations as the original Petition, but adds defective claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934.[1] (Amended Pet. (Dkt. No. 20) ¶¶ 1, 71-84.)  Plaintiff has since filed a flurry of motions in an attempt to make it appear that there is more activity in this action than in the consolidated state court litigation.[2]

For example, on August 25, 2010, Plaintiff filed a Motion for Preliminary Injunction, Temporary Restraining Order and Expedited Trial (Dkt. No. 22).  In that motion, Plaintiff asks the Court to "enjoin[] the Company's Board from enforcing" (P.I. Br. (Dkt. No. 22-1) at 19) certain provisions of a Note Purchase Agreement that Casey's publicly filed with the Securities and Exchange Commission on August 10, 2010 (Dkt. 22-5).  Plaintiff's claim makes no sense.  The Board does not have discretion to "enforce" (or not enforce) the change of control

---

[1] Following the filing of the Amended Petition and Plaintiff's request to file the Second Amended Petition, and in order to avoid confusion and the filing of duplicative motions and briefs on the same topic, the Parties have agreed that:  (1) Defendants will withdraw, without prejudice, the First Motion to Dismiss and the First <u>Colorado River</u> Motion; (2) if the Court grants Plaintiff's request to file the Second Amended Petition, Defendants' time to move against or answer the Second Amended Petition will be 14 days after the Court's order granting Plaintiff's request to file the Second Amended Petition; and (3) if the Court denies Plaintiff's request to file the Second Amended Petition, Defendants' time to move against or answer the Amended Petition will be 14 days after the Court's order denying Plaintiff's request to file the Second Amended Petition.

[2] Plaintiff's attempt to avoid Defendants' stay motion should be rejected.   <u>See</u> <u>Tyrer v. City of S. Beloit</u>, 516 F.3d 659, 663 n.2 (7th Cir. 2008) (district court correctly "refused to allow [plaintiff] to circumvent the stay" under <u>Colorado River</u> "by amending his federal complaint").

provisions at issue.  Those provisions are contractual rights belonging to, and thus part of the

consideration bargained for by, the counterparties to the Note Purchase Agreement – i.e., the

Note Holders who purchased the notes.

On August 30, 2010, Plaintiff filed the instant Motion for Leave to Amend (Dkt.

No. 24), seeking to add 32 new defendants – the Note Holders – and a new claim against the

Note Holders for aiding and abetting breach of fiduciary duty in connection with the Note

Purchase Agreement.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶¶ 24-55, 81, 122-127.)

Plaintiff did not seek to amend its Exchange Act claims.  As a result, we do not set forth the

many reasons why those claims must be dismissed in this Brief.  Nor is it necessary to decide the

viability of those claims at this time.  Plaintiff does not (and cannot) rely upon its Exchange Act

claims in its preliminary injunction motion, which concerns only the Note Purchase Agreement

(the terms of which were fully disclosed when Casey's filed the Note Purchase Agreement with

the SEC).  Plaintiff also has dropped its Motion for Limited Expedited Discovery (Dkt. No. 6),

informing the Court at the September 1 status conference that it did not need discovery to

support its preliminary injunction arguments.

Plaintiff's Motion for Leave to Amend should be denied.  The proposed

amendment would be futile because Plaintiff's proposed claims (like the claims already asserted)

are incurably defective on their face.  Plaintiff's breach of fiduciary duty claims fail under Iowa

law because they are indisputably derivative in nature and Plaintiff has not made a demand on

Casey's Board.  Moreover, Iowa statutory law explicitly authorizes the actions the Board has

taken here and, therefore, bars Plaintiff's claims.

## THE IOWA STATUTORY FRAMEWORK

It is important to emphasize at the outset that the Iowa legislature has granted directors of Iowa corporations broad discretion to determine the future of the corporations they govern, including whether to assert derivative claims and how best to address hostile acquirers.

Iowa Code Section 490.742 (the "Demand Statute"), part of the Iowa Business Corporations Act, provides that:

"A shareholder shall not commence a derivative proceeding until both of the following have occurred:

1. A written demand has been made upon the corporation to take suitable action.

2. Ninety days have expired from the date the demand was made, unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period." Iowa Code § 490.742.

Thus, in Iowa, a shareholder <u>must</u> make a demand on the board <u>before</u> commencing any derivative action. There are no exceptions. <u>See</u> 6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.) (explaining that the enactment of Section 490.742 created "a 'universal demand' requirement" in Iowa.) Even after the shareholder makes a written demand, it must wait 90 days before filing suit "unless irreparable injury to the corporation would result". Iowa Code § 490.742.

Iowa Code Section 490.1108A (the "Constituency Statute"), also part of the Iowa Business Corporations Act, enumerates the factors that directors of an Iowa corporation may consider when faced with a hostile tender offer. It states:

"A director, in determining what is in the best interest of the corporation when considering a tender offer or proposal of acquisition . . . <u>may consider any or all of the following community interest factors, in addition to consideration of the effects of any action on shareholders:</u>

a. The effects of the action on the corporation's employees, suppliers, creditors, and customers.

b. The effects of the action on the communities in which the corporation operates.

  c. The long-term as well as short-term interests of the corporation and its
shareholders, including the possibility that these interests may be best served by
the continued independence of the corporation." <u>Id.</u> (emphasis added).

The Constituency Statute also states that, after considering the aforementioned community interest factors, a board has full authority to reject a takeover offer, and it has <u>no fiduciary duty</u> to engage in further negotiations or actions that would assist the hostile acquirer:

> "If on the basis of the community interest factors . . . the board of directors
> determines that a proposal or offer to acquire or merge the corporation is not in
> the best interests of the corporation, it may reject the proposal or offer", and "has
> <u>no obligation to facilitate, to remove any barriers to, or to refrain from impeding,
> the proposal or offer.  Consideration of any or all of the community interest
> factors is not a violation of the business judgment rule or of any duty of the
> director to the shareholders</u> . . . even if the director reasonably determines that the
> community interest factor or factors outweigh the financial or other benefits to a
> corporation or a shareholder or group of shareholders."  Iowa Code
> § 490.1108A(2) (emphasis added).

These statutory provisions unequivocally prohibit breach of fiduciary duty claims against a board of directors that rejects a hostile takeover based on its determination that the takeover would not be in the best interest of the company's community interest factors, even if the takeover <u>would be</u> in the best interest of the company's shareholders.  <u>See</u> 6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.).  In short, the board of an Iowa company has no fiduciary duty to maximize shareholder value in the takeover context.

   The Iowa Business Corporations Act also expressly authorizes a board to use the so-called "poison pill defense".  Iowa Code § 490.624A.  It provides:

> "The terms and conditions of stock rights or options issued by the corporation
> may include, without limitation, restrictions or conditions that preclude or limit
> the exercise, transfer, or receipt of such rights or options by a person, or group of
> persons, owning or offering to acquire a specified number or percentage of the
> outstanding common shares or other securities of the corporation, or a transferee
> of the offeror, or that invalidate or void such stock rights or options held by an
> offeror or a transferee of the offeror."  <u>Id.</u>

That statute grants directors very broad discretion to adopt poison pills to deter or impede hostile takeovers.

## ARGUMENT

## I.     APPLICABLE LEGAL STANDARDS.

Leave to amend is not an "absolute or automatic right".  CIVCO Med. Instruments Co. v. Protek Med. Prods., Inc., 231 F.R.D. 555, 557 (S.D. Iowa 2005).  Rather, the Court may properly deny leave to amend because of undue delay[3] or because the amendment would be futile.  Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008); United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557-58 (8th Cir. 2006).

Here, leave to amend should be denied because the proposed amendments would be futile.  See Zutz v. Nelson, 601 F.3d 842, 850-52 (8th Cir. 2010).  The Court may deny a motion for leave to amend as futile where the proposed amended pleading would not withstand a motion to dismiss.  See id. at 850; Brown v. Kerkhoff, 504 F. Supp. 2d 464, 547 (S.D. Iowa 2007) (collecting cases).

To survive a motion to dismiss, a petition must contain sufficient factual allegations to "state a claim to relief that is plausible on its face".  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard requires a party to plead a basis for liability that is more than a "sheer

---

[3] Despite the frantic schedule Plaintiff suggested in its (now withdrawn) Motion for Limited Expedited Discovery (Dkt. No. 6) and Motion for Preliminary Injunction, Temporary Restraining Order and Expedited Trial (Dkt. No. 22), Plaintiff waited nearly three weeks after the details of the financing were publicly disclosed before filing the instant motion.  Indeed, Plaintiff asked this Court to invalidate a provision of the Note Purchase Agreement (to which the Note Holders are parties) before seeking to join the Note Holders.  Plaintiff's unreasonable delay in seeking to join the Note Holders – who are necessary parties to its proposed claims – bars the relief Plaintiff seeks.  See Bremer Bank, Nat'l Ass'n v. John Hancock Life Ins. Co., No. Civ. 06-1534, 2006 WL 1205604, at *2-3 (D. Minn. May 2, 2006).

possibility". Id. To satisfy its pleading obligation, Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". Twombly, 550 U.S. at 555. "In order to successfully state a claim upon which relief can be granted, [Plaintiff] 'must assert facts that affirmatively and plausibly suggest [Plaintiff] has the right [it] claims . . . rather than facts that are merely consistent with such a right'". Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893, 895 (8th Cir. 2010) (quoting Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (third and fourth alterations in original). Although the Court must take Plaintiff's factual allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation'". McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).

As demonstrated below, Plaintiff's Second Amended Petition (as well as its Amended Petition) both "fail to state claims upon which relief could be granted". See Brown, 504 F. Supp. 2d at 547. Therefore, "denial of leave to amend is proper". See id.[4]

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

### A.   Plaintiff's Breach of Fiduciary Duty Claims Are Facially Invalid for Failure To Make a Pre-Suit Demand on Casey's Board.

It is black-letter law that, before bringing a derivative suit, a shareholder must first make a demand on the board of directors asking the corporation to take appropriate action. E.g., Fed. R. Civ. P. 23.1(b)(3). Here, the demand requirement is governed by Iowa law because Casey's is an Iowa corporation. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991).

---

[4] As indicated in note 1 supra, Defendants intend to move to dismiss the operative pleading in full pursuant to the schedule agreed to by the parties.

<u>Cf.</u> <u>Markewich ex rel Medtronic, Inc. v. Collins</u>, 622 F. Supp. 2d 802, 807 (D. Minn. 2009) (dismissing complaint for failure to make a demand under Minnesota law).

Iowa law mandates that, before bringing a derivative suit, a shareholder must first make a demand on the board of directors asking the corporation to take appropriate action. Iowa Code § 490.742. Indeed, in 2003, the Iowa legislature amended the Iowa Business Corporations Act to eliminate any exception to the demand requirement. <u>See</u> <u>id.</u>; 6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.). Thus, a shareholder of an Iowa corporation <u>must</u> make a demand on the board <u>before</u> commencing a derivative suit – no exceptions. <u>See</u> Iowa Code § 490.742; 6 Iowa Prac., Bus. Orgs. § 28:7 (2009 ed.) (explaining that Iowa has a "universal demand" requirement).

Pursuant to Iowa law, a derivative claim is one "in which shareholders allege that corporate directors harmed the corporation by their acts or omissions, such that the corporation experienced a loss". <u>Kelly v. Englehart Corp.</u>, Nos. 1-241, 99-1807, 2001 WL 855600, at *9 (Iowa Ct. App. July 31, 2001) (citing <u>Weltzin v. Nail</u>, 618 N.W.2d 293, 295 (Iowa 2000)). A claim that "include[s] within its ambit shareholders other than the plaintiffs" and "refers to harm affecting all the shareholders" is "derivative in nature". <u>McGinnis v. Iowa Clinic, P.C.</u>, No. 08-1005, 2009 WL 2424643, at *3 (Iowa Ct. App. Aug. 6, 2009). A direct action, on the other hand, is one "where a plaintiff complains of a loss separate from that of other shareholders or alleges a special duty owed to the shareholder distinct from duties owed to the corporation". <u>Kelly</u>, 2001 WL 855600, at *9.

There can be no doubt that Plaintiff's breach of fiduciary claims are derivative under Iowa law (notwithstanding Plaintiff's failure to characterize them as such). <u>See</u> <u>Kelly</u>, 2001 WL 855600, at *9; <u>McGinnis</u>, 2009 WL 2424643, at *3. Plaintiff purports to bring its claims on behalf of "plaintiff <u>and other members of the Class</u>" (Second Amended Pet. (Dkt. No.

9

24-1, Ex. A) ¶¶ 119 (emphasis added), 123-126) and asserts that "plaintiff <u>and the Class</u> will continue to suffer irreparable harm" absent intervention by the Court (<u>id.</u> ¶¶ 121 (emphasis added), 127).  Plaintiff does not allege that the Board breached any duty specially owed to them. (<u>See id.</u> ¶¶ 121, 125-126 (alleging that Defendants breached duties owed "to plaintiff and the other members of the Class").)  Nor do Plaintiffs allege a "separate loss" arising from the alleged breach.  Rather, any harm resulting from the Board's alleged failure to "engage[e] in good-faith negotiations" to sell the Company to Couche-Tard (<u>id.</u> ¶ 1) is borne by all shareholders equally. Iowa treats such claims as derivative in nature.

Delaware law – which Plaintiff cites almost exclusively in its other briefs (<u>see, e.g.</u>, P.I. Br. (Dkt. No. 22-1) at 8-15) – does not apply here.  The Iowa legislature has rejected Delaware takeover law and the Iowa courts also have rejected basic tenets of Delaware corporate law.  <u>See, e.g.</u>, Iowa Code §490.1108A; <u>Nw. Inv. Corp. v. Wallace</u>, 741 N.W.2d 782, 791 (Iowa 2007) ("[w]hile [plaintiff's] position may be the law in Delaware, we choose" not to follow it); <u>Cohen v. Berkshire Hathaway, Inc.</u>, No. CL 81833 (Iowa Dist Ct., Polk County Aug. 4, 2000) (rejecting Delaware law as "completely irrelevant to the facts of this case").

However, <u>even in Delaware</u>, Plaintiff's claims would be derivative.  At bottom, Plaintiff alleges entrenchment.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 6 (alleging that the Board instituted defensive measures "[i]n order to secure their continued positions" and "in an effort to entrench themselves"); <u>id.</u> ¶ 10 (alleging that Board "creat[ed] barriers to a change of control in order to ensure that they will retain their prestigious and lucrative positions with the Company"); <u>see also id.</u> ¶¶ 9, 72, 75, 80, 121; P.I. Br. (Dkt. No. 22-1) at 5, 17-19.) Entrenchment claims are derivative in nature.  <u>In re NYMEX S'holder Litig.</u>, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, at *9 (Del. Ch. Sept. 30, 2009); <u>In re First Interstate</u>

Bancorp Consol. S'holders Litig., 729 A.2d 851, 861-62 (Del. Ch. 1998), aff'd sub nom, Bradley

v. First Interstate Bancorp, 748 A.2d 913 (Table), 2000 WL 383788, at *1 (Del. Mar. 21, 2000).[5]

      Because Plaintiff's proposed claims are derivative in nature, it must make a

demand on the Board before filing suit. Iowa Code § 490.742. It has not done so. Thus,

Plaintiff's breach of fiduciary duty claims are facially invalid and must be dismissed. McGinnis,

2009 WL 2424643, at *4 (affirming dismissal of derivative claim for failure "to comply with the

statutory prerequisites for filing this type of proceeding"); see also State v. Olsen, 618 N.W.2d

346, 351 (Iowa 2000) ("[O]nce the legislature has spoken, [the court's] role is to give effect to

the law as written, not to rewrite it to reflect a policy different from that language." (internal

quotation marks omitted)); U.S. Jaycees v. Iowa Civil Rights Comm'n, 427 N.W.2d 450, 455

(Iowa 1988) ("It is not [a court's] function to rewrite a statute. If changes in a law are desirable

from a standpoint of policy or mere practicality, it is for the legislature to enact them . . . ."

(citation omitted)).[6]

----

[5] In determining whether a claim is derivative or direct, courts look to the substance of the claims actually brought – not the label Plaintiff affixes to them. See, e.g., NYMEX, 2009 WL 3206051, at *9 (Delaware law); Van Baale v. City of Des Moines, 550 N.W.2d 153, 156 (Iowa 1996) (Iowa law). In its preliminary injunction motion, Plaintiff attempts to dress up its allegations as shareholder disenfranchisement claims. (See, e.g., P.I. Br. (Dkt. No. 22-1) at 2, 8, 10, 16.) However, a review of Plaintiff's own authority reveals that, even accepting Plaintiff's allegations as true, this is not a shareholder disenfranchisement case. See DuVall v. Moore, 276 F. Supp. 674 (N.D. Iowa 1967) (cited in P.I. Br. (Dkt. No. 22-1) at 10, 12, 13) (challenged provision expressly disallowed holders of Class B stock from voting on renewal of corporate charter); Watts v. Des Moines Register & Tribune, 525 F. Supp. 1311 (S.D. Iowa 1981) (cited in P.I. Br. (Dkt. No. 22-1) at 12, 13) (voting trust). Unlike the provision at issue in DuVall, the change of control provision in the Note Purchase Agreement does not foreclose a shareholder's right to vote or preclude shareholders from voting for other nominees. It may (potentially) compel the corporation (Casey's) to undertake a refinancing, but it does not preclude shareholders from exercising their right to vote (or not to vote) their shares a particular way.

[6] The proposed amendment relates solely to the purported state law claims concerning the Note Purchase Agreement, all of which depend upon the existence of an underlying claim for breach of fiduciary duty. That underlying claim, and any aiding and abetting claims, are

**B.    The Iowa Takeover Statutes Specifically Bar Plaintiff's Claims.**

Even setting aside Plaintiff's failure to meet the demand requirement, Plaintiff's breach of fiduciary duty claims – which allege that the Board "has fail[ed] to consider value-maximizing alternatives in good faith" (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 60) and has declined to "consider . . . a transaction that would increase shareholder value" (id. ¶ 4) – fail as a matter of law.  While the Board here did fully evaluate Couche-Tard's offer (and determined that the offer does not reflect the full value of Casey's and was not in the best interests of Casey's shareholders), even if it is assumed that the Board did not do so, this case cannot proceed.  That is because Iowa law simply and unequivocally does not require that directors evaluate tender offers on the basis of maximizing shareholder value.  Nor does Iowa law require that directors – having evaluated and rejected an offer as not in the best interest of its community interest factors – facilitate the hostile offeror's advances.  To the contrary, Iowa statutory law expressly authorizes directors

- not to facilitate the hostile offer,

- not to remove barriers to the hostile offer,

- not to refrain from impeding the hostile offer, and indeed,

- to take defensive measures to impede such a hostile offer.

Plaintiff has not challenged, and told this Court that it does not intend to challenge, the validity of the Iowa Takeover statutes, nor does it challenge the applicability of those statutes to this case.  Thus, even accepting Plaintiff's factual allegations as true, its claims must be dismissed as a

---

derivative in nature and thus, under Iowa law, the failure to make a demand is fatal to them. Plaintiff's disclosure claims under the Exchange Act (1) are not the subject of the proposed amendment, and (2) cannot legitimately have anything to do with the Note Purchase Agreement, the terms of which were fully disclosed when Casey's filed the Note Purchase Agreement with the SEC.

matter of law:  the Iowa statutes reject the legal premise upon which Plaintiff's petition rests.  As a result, Plaintiff has failed "to state a plausible cause of action".  See Zutz, 601 F.3d at 851 (citing Iqbal, 129 S. Ct. at 1949).  The proposed amendment would be futile.

### 1.   The Board Has No Duty Under Iowa Law to Maximize Shareholder Value.

In evaluating Couche-Tard's unsolicited offer, the Board had no fiduciary duty to maximize shareholder value.  Instead, Iowa's Constituency Statute allows the Board to consider not only the impact of the offer on Casey's shareholders, but also the impact a transaction would have on a host of other interested persons and communities, including Casey's "employees, suppliers, creditors, and customers" and "the communities in which [Casey's] operates".  Iowa Code § 490.1108A(1)(a), (b).

In Iowa, those factors are not subordinate to the interests of shareholders.  Iowa Code § 490.1108A(2) ("Consideration of any or all of the community interest factors is not a violation of . . . any duty of the director to the shareholders . . . even if the director reasonably determines that a community interest factor or factors outweigh the financial or other benefits to the corporation or . . . shareholders."); 6 Iowa Prac., Bus. Orgs. § 28:9 (2009 ed.) (The Iowa Constituency Statute "does not merely require directors to legitimize their consideration of non-shareholder interests by a theory of maximization of corporate profits in the long-run . . . .  The Iowa director can, in the acquisition context at least, allow the interests of other corporate constituencies to trump the interests of shareholders."); see also Jonathan D. Springer, Corporate Constituency Statutes: Hollow Hopes and False Fears, 1999 Ann. Surv. Am. L. 85, 99 (1999) ("In Iowa, it is clear that directors may consider interests of constituencies equally with shareholders' interests.").  Thus, Plaintiff's allegation that the Board breached its fiduciary duties

by "fail[ing] to consider value-maximizing alternatives" is wrong as a matter of law.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 60.)

Moreover, the Iowa statutes make clear that the Board – having determined that Couche-Tard's offer is not in the best interests of Casey's shareholders or Casey's non-shareholder constituencies – has no obligation to entertain Couche-Tard's overtures or to refrain from blocking them.  Iowa Code § 490.1108A(2) (once a board determines to reject a tender offer based on the "community interest factors" it has "no obligation to facilitate, to remove any barriers to, or to refrain from impeding, the proposal or offer" (emphasis added)).  Thus, Plaintiff's allegation that the Board's "refusal to even talk with Couche-Tard [is] in violation of [its] fiduciary duties" is facially meritless.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 10.)

### 2.      The Board Is Permitted to Institute Defensive Measures.

Plaintiff alleges that the Board's adoption of "draconian, disproportionate, and preclusive measures", including a poison pill, was in violation of its fiduciary duties.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶¶ 11, 70-71.)  Plaintiff is wrong.

Iowa law expressly authorizes the use of the "poison pill" defense (Iowa Code § 490.624A), and the Constituency Statute expressly authorizes the Board to enact any defensive measure designed to "imped[e]" Couche-Tard's hostile bid (Iowa Code § 490.1108A(2)).  As a result, Plaintiff's allegation that Casey's May 27 and June 2 amendments to its employment agreements with various Casey's employees were defensive measures designed to "further entrench and enrich the Board" fails as a matter of law.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 72.)  Even if the employment agreements were defensive measures, they would be authorized by Iowa law and, therefore, could not form the basis for a breach of fiduciary duty

claim.[7]  Iowa Code § 490.1108A(2).  The same is true of Casey's securities fraud litigation against Couche-Tard, <u>Casey's General Stores, Inc. v. Alimentation Couche-Tard Inc.</u>, No. 10-cv-00265-JAJ-TJS (S.D. Iowa filed June 11, 2010) (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶ 74), Casey's decision to pay a dividend to its shareholders (<u>id.</u> ¶ 75) and Casey's recapitalization plan, including the Note Purchase Agreement (<u>id.</u> ¶¶ 76-81).  <u>See</u> Iowa Code § 490.1108A(2).

        In a feeble attempt to avoid these statutory authorities, Plaintiff asserts that the Board's "true motives" were to entrench their own positions.  (Second Amended Pet. (Dkt. No. 24-1, Ex. A) ¶¶ 78-80.)  That theory has been soundly rejected as specious and tautological even under the inapplicable Delaware law trumpeted by Plaintiff.  <u>See</u> <u>Pogostin v. Rice</u>, 480 A.2d 619, 627 (Del. 1984) ("Acceptance of such an argument would condemn any board, which successfully avoided a takeover, regardless of whether that board properly determined that it was acting in the best interests of the shareholders."), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000).  Under the Iowa statutes, which expressly reject Delaware's insistence that the Board maximize shareholder value to the exclusion of other considerations, Plaintiff's theory is a non-starter.

---

    [7] Moreover, Plaintiff's allegations concerning Casey's May 27 and June 2 employment agreement amendments are simply wrong – those amendments were <u>not</u> defensive measures. Instead, for more than 13 years before those 2010 amendments, the employment agreement for Casey's officers had contained provisions extending employment for two years upon a change of control.  (<u>See</u> Casey's General Stores, Inc., Quarterly Report (Form 10-Q) (Dkt. No. 15-4) at Ex. 10.29 (Mar. 14, 1997) ("The Company hereby agrees to continue the Employee in its employ . . . for the period commencing on [a change of control] and ending on . . . the second anniversary of such date . . .".).)  The 2010 amendments simply reflected the requirements of applicable federal tax laws and "modifie[d] the definition of a 'Change of Control' to provide that a Change of Control will be said to occur upon the consummation of a merger of the Company or certain other transactions, rather than upon shareholder approval of the same".  (Casey's General Stores, Inc., Current Report (Form 8-K) (Dkt. No. 15-5) at 2 (June 2, 2010).)  If anything, those changes are favorable to Casey's shareholders.

Moreover, while the Board is not <u>required</u> to maximize shareholder value in this context, it nevertheless has done so.  The Note Purchase Agreement, taken as a whole, and the Company's recapitalization plan (which is being financed with the proceeds of the Notes) indisputably are beneficial to the Company's shareholders.  The change of control provisions are only one aspect of a larger, negotiated transaction and are part of the consideration for the extraordinarily favorable financing terms in the Note Purchase Agreement (which Casey's believes could not have been obtained without providing protections to the lenders in the event of a change of control).  The change of control provisions enabled the Company to repurchase approximately 25% of its outstanding shares – and to do so at comparatively modest cost to the Company, thereby enhancing the value of the remaining shares.  The change of control provisions are not defensive measures and should not be read in isolation, but must be considered in the context of the entire Note Purchase Agreement and the Company's recapitalization plan.  Read as a whole, the Note Purchase Agreement, and the financing provided thereby, indisputably benefits shareholders.

More important for current purposes, however, even if the change of control provisions <u>were</u> defensive measures, the Iowa legislature has authorized the Board to adopt them in exactly this context.  <u>See, e.g.</u>, 6 Iowa. Prac., Bus. Orgs. § 28:9 (2009 ed.).  As a result, Plaintiff's claims should be dismissed as a matter of law.  <u>See, e.g.</u>, <u>Olsen</u>, 618 N.W.2d at 351; <u>U.S. Jaycees</u>, 427 N.W.2d at 455.

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY.

Plaintiff has not made a pre-suit demand upon the Board, as required by Fed. R. Civ. P. 23.1(b)(3) and Iowa statute, Iowa Code § 490.742.  For that reason, even without more, plaintiff may not maintain its aiding and abetting claim, which, like the underlying claim for

breach of fiduciary duty, is derivative in nature.  Moreover, plaintiff has not stated, and cannot

state, an underlying claim against the Board for breach of fiduciary duty arising out of the Note

Purchase Agreement.  Therefore, its claim against the Note Holders for aiding and abetting also

must fail.  See Tubbs v. United Central Bank, N.A., 451 N.W.2d 177, 182 (Iowa 1990) (claim for

aiding and abetting breach of fiduciary duty requires that the principal's "conduct constitutes a

breach of duty" (quoting Restatement (Second) of Torts § 876)).  Put simply, there can be no

aiding and abetting because there is no breach.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiff's Motion for Leave to Amend.

September 3, 2010

/s/ Edward W. Remsburg
Edward W. Remsburg (AT0006511)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone:  515/243-7611
Facsimile:  515/243-2149
E-mail: eremsburg@ahlerslaw.com

Robert H. Baron
Michael A. Paskin
J. Wes Earnhardt
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1422
Facsimile:  (212) 474-3700
Email:  rbaron@cravath.com
          mpaskin@cravath.com
          wearnhardt@cravath.com

Electronically filed.

Electronically served on all parties.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on <u>September 3, 2010.</u>

By       ☐ **U.S. Mail**                    ☐ **Fax**

           ☐ **Hand Delivery**             ☐ **Private Carrier**

           ☒ **Electronically through CM-ECF / Email**

Signature  <u>/s/ Amanda G. Wachuta</u> _____

18