IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| KENTUCKY STATE DISTRICT COUNCIL OF CARPENTERS PENSION TRUST FUND, on behalf of itself and all others similarly situated, | No. 4:10-CV-00332 |
| Plaintiffs, | |
| vs. | |
| ROBERT J. MYERS, KENNETH H. HAYNIE, JOHNNY DANOS, WILLIAM C. KIMBALL, DIANE C. BRIDGEWATER, JEFFREY M. LAMBERTI, RICHARD A. WILKEY, H. LYNN HORAK,and CASEY'S GENERAL STORES, INC., | **ORDER** |
| Defendants. | |

This matter comes before the Court pursuant to Plaintiff Kentucky State District Council of Carpenters Pension Trust Fund's ("KSDC") motion for leave to amend. [Dkt. No. 24-1]  Defendants ("Casey's") resisted the motion [Dkt. No. 29] on September 3, 2010.  KSDC filed a reply on September 7, 2010. [Dkt. No. 30]  For the reasons set forth below, KSDC's motion is denied.

## I. STATEMENT OF MATERIAL FACTS

On April 9, 2010 Alimentation Couche-Tard Inc. ("Couche-Tard") publicly disclosed that it was interested in acquiring Casey's and stated that it had approached the Casey's Board (the "Board") about a strategic transaction in October 2009.  Since that time, Couche-Tard made attempts to engage the Board in negotiations toward a strategic transaction, but the Board refused to negotiate with Couche-Tard.  In its April 9th

1

disclosure, Couche-Tard again requested that the Board meet with Couche-Tard representatives to discuss a potential transaction.  The Board rejected this offer.

On June 2, 2010, Couche-Tard announced a tender offer made directly to Casey's shareholders for $36.00 per share, a 14 percent premium to Casey's closing price the previous day and a 24 percent premium to Casey's one year average closing price.  At the same time, Couche-Tard announced that it was nominating its own slate of directors for election to the Casey's Board.  The Board recommended that Casey's shareholders not tender their shares, stating that the tender offer would adversely impact Casey's other constituencies because of "the differences in the manner in which Casey's and Couche-Tard are operated and managed."

In further response to the tender offer, the Board adopted a shareholder rights plan[1] with a one-year term on April 16, 2010.  Additionally, the Board amended employment agreements with various officers to provide for their continued employment in the event of a change of control.  Casey's also filed suit in this Court on June 11, 2010, alleging that Couche-Tard failed to make material disclosures as required by the Securities Exchange Act of 1934.

On July 22, 2010, Couche-Tard raised its offer price to $36.75.  The Board again rejected the offer on July 27, 2010, and recommended that shareholders not tender their shares.  The next day, the Board announced its plans for a recapitalization, pursuant to

---

[1]The Rights Plan—also known as a "Poison Pill"—becomes exercisable by the Board on the earlier of two triggering conditions: (1) on such date Casey's learns a person has obtained the right to acquire beneficial ownership of 15 percent or more of outstanding common stock, or (2) on such date the Board learns of a tender or exchange offer, which, if successful, would result in a person owning more than 15 percent of outstanding common stock.  In either of these two scenarios, a person accumulating 15 percent or more of outstanding common shares becomes an "Acquiring Person" and the Board has the right to exercise the Poison Pill. The Poison Pill itself contains "flip-in" and "flip-over" provisions that make the outstanding common stock more expensive for an Acquiring Person to purchase.  In the "flip-in" provision, an Acquiring Person would need to purchase thousands of Preferred Shares, and in the "flip-over" provision, the Acquiring Person's common shares become diluted.

which Casey's would acquire up to 25 percent of its outstanding shares at a price between $38 and $40 in a Dutch auction.

To finance its recapitalization, Casey's entered into Note Purchase Agreements with 32 institutional investors ("Note Holders"), raising $569 million.  The Note Purchase Agreements contain a so-called "poison put" provision, under which the notes become immediately payable along with "make-whole" payments if an entity acquires more than 35 percent of Casey's stock or if there is a change in control of the Board.

KSDC filed its initial complaint on July 21, 2010 [Dkt. No. 1], and an amended complaint on August 20, 2010.  [Dkt. No. 20]  KSDC then filed this motion to amend [Dkt. No. 24-1] on August 24, 2010, seeking to add the Note Holders as defendants under an aiding and abetting fiduciary breaches theory.

## II. SUMMARY OF THE ARGUMENTS

KSDC argues that the Court should grant it leave to amend its complaint because it has neither unduly delayed the action nor exhibited bad faith or dilatory motive by seeking to amend.  Further, KSDC asserts that justice requires leave for it to amend because "the Court cannot enter the complete injunctive relief Plaintiff seeks in this action" without adding the Note Holders as defendants.  [Dkt. No. 24-1]

Casey's argues that the Court should deny leave to amend because the amendment would be futile and would unduly delay this case.  To that end, Casey's argues that the proposed amended complaint fails to state a claim upon which relief can be granted as a matter of law because (1) it is a derivative suit for which KSDC failed to properly make a demand on the corporation; and (2) Iowa's takeover statutes bar KSDC's claim for breach of fiduciary duty, which in turn bars its proposed aiding and abetting claim.

## II. ANALYSIS

### A. Applicable Standards

3

The Federal Rules of Civil Procedure allow a party to amend its pleading once as a matter of right, within certain time constraints. Fed R. Civ. P. 15(a)(1). A party may only further amend its pleadings with the opposing party's written consent or with leave of the court. Fed. R. Civ. P. 15(a)(2). Although "[t]he court should freely give leave when justice so requires," Id., "[t]here is no absolute or automatic right to amend." CIVCO Med. Instruments Co. v. Protek Med. Prods., Inc., 231 F.R.D. 555, 557 (S.D. Iowa 2005). Specifically, the Court may properly deny leave to amend if such amendment would be futile. Sherman v Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2006). For this purpose, futility means that "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (quoting Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir.2008)). Thus, the Court must determine whether KSDC's proposed amended complaint states a claim upon which relief can be granted. See Fed. R. Civ. P 12(b)(6).

KSDC seeks to amend its complaint to add the 32 Note Holders as defendants and to add one additional count (Count IV) against the Note Holders for aiding and abetting breaches of Casey's directors' fiduciary duties. KSDC does not seek to amend any other counts. Thus, the Court need only determine whether Count IV is sufficient to withstand a motion to dismiss, such that KSDC should be granted leave to amend. Because Casey's argues that KSDC's claim in Count IV is derivative, the Court must also consider whether it is, in fact, a derivative claim and whether KSDC met the pre-suit requirements for derivative claims under Iowa law.

To survive a 12(b)(6) motion, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). To adequately state a claim, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief

above the speculative level . . . ." Id.   (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 235-36 (3d ed. 2004)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).

The court may only consider matters within the pleadings.   Moble Sys. Corp. v. Alorica Cent., L.L.C., 543 F.3d 978, 982 (8th Cir. 2008).   When analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the court must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff. Id.; see also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002); Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (citations omitted)).   "The issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims." United States v. Aceto Agr. Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984) (quotation marks omitted)).   A court must "then determine whether [the complaint] plausibly give[s] rise to an entitlement for relief." Iqbal, 129 S.Ct. at 1950.

## B. Plaintiff Failed to Make the Required Pre-Suit Demand

In its resistance, Casey's asserts that KSDC's breach of fiduciary duty claims are derivative.   And because KSDC failed to make the necessary pre-suit demand on the corporation, Casey's argues that these claims fail as a matter of law.   KSDC argues that its claim is for deprivation of shareholder voting rights, which is a direct rather than a derivative claim.

Because Casey's is an Iowa corporation, Iowa law governs the demand requirement for derivative suits.   Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991); Ezzone v. Riccardi, 525 N.W.2d 388, 394 n.2 (Iowa 1994).

Iowa law requires that, before bringing a derivative suit, a shareholder must make a written demand upon the corporation, asking it to take suitable action. Iowa Code § 490.742. Further, the shareholder must give the corporation 90 days to respond to its demand or must receive notification that the corporation has rejected the demand before filing suit. Id. The shareholder is excused from this latter requirement only if irreparable injury to the corporation would result by waiting for expiration of the 90 day period. Id. Here, KSDC has made no such demand. As such, the Court need only decide whether its claim for aiding and abetting breaches of fiduciary duty is a derivative claim.

Iowa courts look to the substantive allegations of the claim to determine whether it is properly characterized as derivative. McGinnis v. Iowa Clinic, P.C., 2009 WL 2424643 at *3 (Iowa App.) (citing Jones v. Iowa State Highway Comm'n, 207 N.W.2d 1, 2 (Iowa 1973)); Kelly v. Englehart Corporation, 2001 WL 855600 at *9 (Iowa App.) ("In determining whether a claim is direct or derivative, we examine the nature of the claimed wrong."). Allegations of harm that affects all shareholders are derivative. McGinnis, 2009 WL 2424643 at *3. By contrast, claims of "separate and distinct" harm to the plaintiffs, or claims that allege a special duty owed to the plaintiff that is distinct from the duties owed to all other shareholders, are direct claims not subject to the demand requirement of derivative suits. Id., Kelly, 2001 WL 855600 at *9. In McGinnis, where the plaintiffs brought claims "as shareholders and for and on behalf of all fellow shareholders," the Iowa Court of Appeals held that such claims were "plainly derivative in nature." Id. The Court of Appeals went on to affirm the lower court's dismissal of plaintiff's claims for failure to comply with the demand requirement. Id.

In Count IV of its proposed amended complaint, KSDC alleges that the Note Holders "aided and abetted the [the Board] in breaching their fiduciary duties *owed to the public shareholders of Casey's*, including plaintiff and members of the Class." [Dkt. No. 24-1, Ex. A (emphasis added)] KSDC did not allege either that they suffered a separate and distinct harm as a result of this breach or that the Board owed them a special duty not

6

owed to the shareholders at large.

KSDC does argue, however, that its claim is properly characterized as one for deprivation of shareholder rights, which is not subject to the demand requirement. See C Plus Northwest Inc. v. DeGroot, 534 F. Supp. 2d 937, 942 (S.D. Iowa 2008). The Court disagrees. The shareholder deprivation cases cited by KSDC involve direct interference with shareholder voting. See DuVall v. Moore, 276 F.Supp. 674, 678 (N.D. 1967) (challenged provision prohibited Class B shareholders from voting); Watts v. Des Moines Register & Tribune, 525 F.Supp. 1311, 1322 (S.D. Iowa 1981) (voting trust through which management obtained control over the voting rights of the shareholders); MM Companies, Inc. v. Liquid Audio, Inc., 813 A.2d 1118, 1132 (Del. Supr. 2003) (board amendment to bylaws increased board from five to seven members to reduce impact if shareholder's two board nominees were elected). Here, the poison put does appear to be a defensive mechanism intended to impede the success of Couche-Tard's hostile tender offer. It does not, however, directly preclude shareholders from exercising their voting rights in the same way as the above-cited cases. Indeed, Iowa courts have never recognized a cause of action for deprivation of shareholder voting rights on facts at all similar to this case.

Despite KSDC's claim that shareholders now face a vote that arguably threatens to bankrupt the company, the poison put will more likely require Casey's to refinance the debt if Couche-Tard's slate is elected and if the Note Holders demand payment on the notes. As KSDC points out, the end result of the poison put is that it "increases the price to acquire Casey's by $2 per share." [Dkt. No. 24-1, Ex. A, ¶ 79] Further, even if KSDC did state a claim for deprivation of voting rights, the Court would find that KSDC's claim is derivative because the harm is suffered by all shareholders equally and thus by the corporation as a whole. As such, KSDC fails to state a claim for deprivation of voting rights.

The Court concludes that KSDC's claim is a derivative claim for breach of fiduciary

7

duty that is subject to the demand requirement under Iowa law.  The Court further concludes that KSDC failed to meet the derivative pre-suit demand requirement.  As a result, KSDC's claim in Count IV would not withstand a motion to dismiss under 12(b)(6).

### C. Plaintiff's Claim for Aiding and Abetting Fiduciary Breaches Fails

Even if KSDC had properly made a pre-suit demand before filing its derivative action, its claim in Count IV would still not survive a motion to dismiss due to Iowa Code sections 490.1108A (the "Constituency Statute") and 490.624A (the "Poison Pill Statute").

To properly state a claim for aiding and abetting breaches of fiduciary duties, the plaintiff must show that an underlying breach actually occurred.  Heick v. Bacon, 561 N.W.2d 45, 51-52 (Iowa 1997).  Thus, the Court must also consider Count III of KSDC's complaint to determine whether Casey's directors did, in fact, breach fiduciary duties owed to Casey's shareholders.  If not, KSDC cannot maintain a cause of action against the Note Holders for aiding and abetting fiduciary breaches.

Casey's asserts that KSDC's claim is legally insufficient because the Iowa Constituency Statute does not require an Iowa board of directors to evaluate acquisition offers on the basis of maximizing shareholder value.  As such, Casey's argues that KSDC has not stated a claim for breach of fiduciary duty upon which relief can be granted, has consequently not stated a claim for aiding and abetting such a breach, and therefore should be denied leave to amend their complaint.  The Court agrees.

Under the Constituency Statute, corporate directors, when evaluating a tender offer, can consider a number of non-shareholder constituencies, including the corporation's employees, suppliers, creditors, customers, and the community in which the corporation operates.  Iowa Code § 490.1108A(1)(a)-(b).  Further, corporate directors can reject a tender offer solely on the basis of these "community interest factors."  Iowa Code § 490.1108A(1)(c).  The Constituency Statute continues:

8

> If the board of directors determines to reject any such proposal or offer, the board of directors has no obligation to facilitate, to remove any barriers to, or to refrain from impeding, the proposal or offer. Consideration of any or all of the community interest factors is not a violation of the business judgment rule or of any duty of the director to the shareholders, or a group of shareholders, even if the director reasonably determines that a community interest factor or factors outweigh the financial or other benefits to the corporation or a shareholder or group of shareholders.

Iowa Code § 490.1108A(2). Thus, Iowa law places the interest of corporate shareholders and other corporate constituencies on equal footing, allowing directors to reject an offer under a community interest analysis, even if the offer would maximize shareholder value. Id. Casey's also notes that the Poison Pill Statute explicitly authorizes the poison pill defense to hostile tender offers, such as the one used by Casey's to repel Couche-Tard. See Iowa Code § 490.624A. Casey's argues that Iowa law's authorization of the poison pill, combined with its declaration that a board has no obligation "to remove any barriers to, or to refrain from impeding, the proposal or offer" causes KSDC's claim in Count IV to fail as a matter of law.

In its proposed amended complaint, KSDC alleges that:

> [T]he Notes Purchasing Defendants were aware that the Individual Defendants were breaching their duties in order to entrench themselves in their position. In addition, the Note Purchase Agreement with the poison put is so onerous on its face that the Notes Purchasing Defendants must have known that the Individual Defendants were breaching their fiduciary duties by causing the Company to enter into it. Nevertheless, the Notes Purchasing Defendants knowingly participated and assisted in the Individual Defendants' breaches of duty for their own gain by entering into the Note Purchase Agreement.

[Dkt. No. 24-1, Ex. A, ¶ 81] This allegation is the basis of Count IV in KSDC's proposed amended complaint. However, as acknowledged by KSDC, the Board stated that the

offers were not in the best interests of Casey's and would adversely impact Casey's other constituencies. [Dkt. No. 24-1, Ex. A, ¶ 5, 66] As Casey's correctly argues, once the board made this determination, the Constituency and Poison Pill Statutes explicitly permit the Board to impede the offer or maintain barriers to it.  Thus, even assuming the Note Purchase Agreement was intended to thwart the Couche-Tard offers, the Board did not breach its fiduciary duties by adopting it.

KSDC argues that the Constituency Statute cannot absolve the Board from all breaches of fiduciary duties, no matter how egregious.  The Court agrees.  However, the Court also concludes that the Board's adoption of the poison put is permitted by the Constituency Statute, which expressly allows the Board to maintain defensive mechanisms after rejecting an offer.

Therefore, the Court concludes that KSDC's aiding and abetting fiduciary breaches claims cannot withstand a 12(b)(6) motion to dismiss, making its proposed pleading amendment futile.  Consequently, the Court denies KSDC's motion to amend its pleadings. Upon the foregoing,

**IT IS ORDERED** that plaintiff's motion to amend its pleadings [Dkt. No. 24-1] is denied.

**DATED** this 9th day of September, 2010.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA

10